LAURA E. DUFFY
United States Attorney
WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorney
Cal. State Bar No. 186772/250301
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7859/5220
Email:  William.P.Cole@usdoj.gov
        Caroline.Han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Crim. Case No. 10CR4246-JM |
| Plaintiff, ) | RESPONSE IN OPPOSITION TO DEFENDANT ISSA DOREH'S MOTIONS FOR: |
| v. ) | |
| ISSA DOREH (3), ) | (1)    A BILL OF PARTICULARS; |
| ) | (2)    LEAVE TO JOIN CO-DEFENDANT'S MOTIONS; AND |
| Defendant. ) | (3)    LEAVE TO FILE FURTHER MOTIONS |
| ) | Date:  February 9, 2012 |
| ) | Time:  9:00 a.m. |

COMES NOW the plaintiff, United States of America, by and through its counsel, Laura E. Duffy, United States Attorney, and William P. Cole and Caroline P. Han, Assistant U.S. Attorneys, and hereby files its Response and Opposition to Defendant Issa Doreh's above-captioned motions.

/ /

/ /

/ /

# I.

## INTRODUCTION

Despite the extensive discovery provided to him, and a Superseding Indictment that alleges all essential elements, defendant Issa Doreh seeks an order requiring the United States to file a bill of particulars.  The Court should deny the motion.  The concise and plain language of the Superseding Indictment–coupled with the audio recordings and Shidaal Express transaction records produced in discovery–adequately advise Doreh of the charges against him.  Nothing more is required.

# II.

## STATEMENT OF FACTS

### A.   The Superseding Indictment

On October 22, 2010, a federal grand jury handed up a five-count Indictment against defendants Basaaly Saeed Moalin ("Moalin"), Mohamed Mohamed Mohamud ("Mohamud"), and Doreh.  The Indictment charged all defendants with the following offenses:

Count 1:     Conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A;

Count 2:     Conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B;

Count 3:     Conspiracy to kill in a foreign country, in violation of 18 U.S.C. § 956; and

Count 4:        Conspiracy     to      launder monetary
instruments, in violation of 18 U.S.C. §
1956.

The Indictment also charged defendant Moalin with one count of providing material support to terrorists, in violation of 18 U.S.C. § 2339A (the only substantive count alleged in the Indictment).

On November 3, 2010, defendant Doreh was arraigned on the Indictment.

On January 11, 2011, the grand jury handed up a Superseding Indictment including the same counts, but adding defendant Ahmed Nasir Taalil Mohamud ("Nasir") as a fourth defendant on Counts 1 through 4.

**B.   <u>Factual Summary</u>**

As described in the Superseding Indictment, al-Shabaab is a violent and brutal militia group that uses intimidation and violence to undermine Somalia's Transitional Federal Government (TFG) and its supporters.  On or about February 26, 2008, the United States Department of State designated al-Shabaab as a Foreign Terrorist Organization (FTO).  Until his death by missile strike on May 1, 2008, Aden Hashi Ayrow was one of al-Shabaab's most well-known and infamous leaders.

Prior to their arrests, Moalin was a San Diego-based cab driver, Mohamud was Imam of a San Diego mosque largely serving the Somali community, and Doreh was an employee of the now-defunct Shidaal Express, a money services business that transferred funds to Somalia.  Nasir was an Anaheim-

based cab driver.   Beginning on a date unknown, but continuing to at least August 5, 2008, these defendants conspired together–and with others known and unknown– to provide money to al-Shabaab and others engaged in violent attacks on the TFG and its supporters.

Moalin maintained direct telephone contact with Ayrow and coordinated money transfers with him.   At Ayrow's urging, the defendants collected money for al-Shabaab and transferred it to Somalia through the Shidaal Express.   The defendants routinely used phony sender and/or recipient names to make structured money transfers.   Moalin, Mohamud, and Doreh used their considerable connections and influence within the San Diego area and elsewhere (including St. Louis) to collect and transmit the funds.   Nasir provided funds from Orange County for inclusion in the transfers to Somalia.   The defendants financed al-Shabaab both before and after its formal designation as an FTO.

When Ayrow died in May 2008, the defendants continued to collect funds and transmit them to Somalia to support violence against the TFG and its supporters.   First, Moalin sought out new contacts within al-Shabaab, including an individual named Omar Mataan, to maintain the flow of funds from San Diego to al-Shabaab.   Second, the defendants provided funds to an individual named Farah Yare to support other militia fighting alongside al-Shabaab.

//

//

The illicit transfers made through the Shidaal Express include at least the following:

| Date: | Amount: |
|---|---|
| 1/1/08 | $1,950 |
| 1/1/08 | $1,950 |
| 2/13/08 | $1,300 |
| 2/13/08 | $700 |
| 4/23/08 | $1,900 |
| 4/23/08 | $1,100 |
| 7/15/08 | $1,250 |
| 7/15/08 | $1,030 |
| 7/23/08 | $1,860 |
| 7/23/08 | $1,650 |
| 8/5/08 | $860 |
| 8/5/08 | $350 |

Also, in early January 2008, Moalin provided Ayrow with use of one of Moalin's properties in Somalia.  During a January 3, 2008 telephone call with Ayrow, Moalin provided Ayrow with detailed directions to the house, told him how to get the key, and explained how Ayrow could hide weapons in the attic or yard.  Moalin even offered to have trees delivered to the property to place over equipment that Ayrow could bury in the ground.  Moalin warned that the property's drawback was that its location and tall trees made it easily identifiable from far away.  Ayrow dismissed the concern, observing that the house would only be used at night.

//

//

5

The audio recordings are rife with discussions of violence and terrorist attacks. For example, on January 20, 2008, Ayrow told Moalin that "we planted a land mine for Abdi Qaybdid [a pro-government militia leader] who was traveling on that road; he was almost hit." Ayrow also described an attack against Somalia's Prime Minister and Deputy Prime Minister, stating: "As soon as they arrived at the Presidential palace, we hit them with 12 mortar shells." The two continued to talk, and Moalin stated: "God is great. God is great. It is something to be thankful of the fact that you are capable to deny them the opening of new offices and to work as a functioning government." During this same call, Ayrow instructed Moalin to tell defendant Mohamud that "he must let us know the amount of money we can expect every month, even if it is one hundred dollars." Ayrow stated: "[W]e want to support the insurgent with it. Whatever he can afford."

Later, when the conspirators grew concerned that law enforcement may be onto them, Moalin told Nasir that "we will lay low for awhile." The following exchange ensued:

| Nasir: | Like say, stop the talking. |
|---|---|
| Moalin: | No but we will lay low of course. We can still support the orphans and – you know? – people in need and – |
| Nasir: | Yes. |

| | |
|---|---|
| 1 | Moalin:  –we  will  conduct  our  actions |
| 2 | along  that  method;  we  will  go |
| 3 | under that pretense now. |
| 4 | Nasir:  Yes,  we  are  helping  the  poor. |
| 5 | They  do  not  know  it  is |
| 6 | bullets;  that  is  the  way  it  is, |
| 7 | you know? |
| 8 | Moalin:  Sure. |

## C.  **Discovery**

The United States has provided the defendants with the Shidaal Express transaction records and hundreds of audio calls.  Furthermore, the United States has provided, and will provide, verbatim transcripts for the subset of audio calls that it may  use in its case-in-chief.  These calls (roughly 100 in number) leave no mystery as to the offenses charged in the Superseding Indictment and constitute the bulk of the evidence that the United States will present at trial.

The United States will provide defense counsel with marked case-in-chief exhibits approximately two weeks before trial.

**III.**

**THE COURT SHOULD DENY THE
REQUEST FOR A BILL OF PARTICULARS**

Doreh has been sufficiently informed of the charges against  him.   The  Superseding  Indictment  alleges  all essential elements of the charged offenses and, coupled with

the extensive discovery, adequately apprises him of the charges. Accordingly, a bill of particulars is unnecessary.

### A. **Doreh's Motion is Untimely**

The determination whether to grant a bill of particulars is left to the court's discretion. <u>Wong Tai v. United States</u>, 273 U.S. 77, 82 (1927); <u>United States v. Mitchell</u>, 744 F.2d 701, 705 (9th Cir. 1984). The court may deny untimely motions outright. <u>Barnard v. United States</u>, 16 F.2d 451, 453 (9th Cir. 1926); <u>Roberson v. United States</u>, 237 F.2d 536, 538 (5th Cir. 1956); <u>United States v. Pyke</u>, 271 F. Supp. 359 (S.D.N.Y. 1967); <u>United States v. Taylor</u>, 25 F.R.D. 225, 226 (E.D.N.Y. 1960) ("To consider the motions [for a bill of particulars] under such circumstances would make a mockery of the 10-day requirement and reduce it to a dead letter, which was neither suggested nor implied when the rules were recently amended. Such disregard for the rules will not be tolerated.")

Federal Rule of Criminal Procedure 7(f) provides that "[t]he defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). Doreh was arraigned on the Indictment on November 3, 2010, and on the Superseding Indictment on January 20, 2011. He did not file the instant motion until December 12, 2011. He has not requested the leave of Court to file his untimely motion, nor even suggested that good cause might exist for the Court to grant such leave.

//

Untimely filing is more than just a procedural defect: it belies the very notion that a defendant does not understand the charges against him.  If the defense, upon reading an indictment, truly cannot understand the basic nature of the charges, one would expect  to hear that complaint shortly after arraignment–not a year later, after extensive discovery and the setting of an agreed trial date.

Because Doreh's motion is untimely, the Court should deny it.

**B.    The Superseding Indictment and Discovery Adequately Apprise Doreh of the Charges Against Him**

Apart from its untimeliness, Doreh's motion fails on the merits.  Put simply, there is no secret about the nature of the charges against him and there is no double jeopardy concern.

The purposes of a bill of particulars are threefold: (1) to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to argue that the prosecution should be barred for a violation of Double Jeopardy.  United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir. 1991).  In determining whether a bill of particular is necessary, courts consider not only the indictment but the discovery.  United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979).  Full discovery "obviates the need for a bill of particulars."  Id.; accord United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983); United States v. Middleton, 35 F. Supp. 2d 1189, 1193 (N.D. Cal.

1999) ("Even if an indictment is vague, a bill of particulars is not necessary if the government's disclosures and discovery adequately advise the defendant of the charges against him.").

Here, the Superseding Indictment alleges all essential elements of each offense in simple, concise terms. The charges track the statutory language. The indictment need not describe the government's evidence, plead evidentiary detail, or identify all the facts supporting the allegations. <u>Wong Tai</u>, 273 U.S. at 81-82.

Counts 1, 2 and 4 of the Superseding Indictment charge conspiracy offenses that do not require allegation or proof of any overt act–the crime is the unlawful agreement itself. In contrast, Count 3 charges conspiracy under 18 U.S.C. § 956, which requires an overt act. <u>See</u> 18 U.S.C. § 956(a)(1) (" . . . if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy"). Accordingly, the Superseding Indictment lists overt acts for Count 3, as required, but does not specify any overt acts for Counts 1, 2 and 4, as none is required.

Although Doreh makes passing reference to double jeopardy, he does not identify any actual double jeopardy concern. When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other. <u>United States v. Lynn</u>, 636 F.3d 1127, 1136 (9th Cir. 2011).

10

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).  Here, each conspiracy charged in the Superseding Indictment requires proof of a fact which the others do not.  For example, only Count 2 requires proof of conspiracy to provide material support to a designated foreign terrorist organization.  18 U.S.C. § 2339B(a)(1) ("Whoever knowingly provides material support or resources to a foreign terrorist organization . . ."); see also United States v. Chandia, 514 F.3d 365, 372 (4th Cir. 2008) ("The elements of the separate crimes charged under § 2339A and § 2339B doe not overlap.").[1/]  Only Count 3 requires proof of an overt act.  And only Count 4 requires proof of a conspiracy to transmit money from a place inside the United States to a place outside the United States with the intent to promote a specified unlawful activity.  18 U.S.C. § 1956(h).  In short, although the four conspiracy counts all arise from the same general course of conduct by the defendants, none raises any double jeopardy concern under Blockburger.

//

_____

[1/]    Because al-Shabaab's designation as an FTO took place in late February 2008 (effective March 18, 2008, upon publication in the Federal Register), Count 2 applies to conspiracy following that designation date.  In contrast, Counts 1, 3 and 4 apply to the defendants' conduct both before and after al-Shabaab's designation as an FTO.

Furthermore, the discovery eliminates any doubt about the nature of the charges.  The United States has not only produced extensive audio recordings, but has identified the most relevant recordings by providing the defense with draft verbatim translations of those particular calls.[2/]  It also has provided the defense with the Shidaal Express transaction records for the money remittances discussed in the audio calls.  This discovery goes far beyond a bill of particulars, because it not only informs the defendants of their alleged offenses, but highlights the great bulk of the United States' evidence against them–something not required in an indictment or a bill of particulars.

For all these reasons, the Court should deny Doreh's motion.

**C.**   **Doreh's Specific Requests Are Unsupported by Law**

Although no bill of particulars is warranted at all, Doreh's specific requests for the bill are inherently flawed.

For example, Doreh requests the names of any co-conspirators known to the grand jury, whether indicted or not.  [Doreh Mot. at pp. 2-3.]  This is not a valid purpose for a bill of particulars.  See, e.g., United States v. DiCesare, 765 F.2d 890, modified on other grounds, 777 F.2d 543 (9th Cir. 1985) (request for the names of unknown

---

[2/]   In fact, the United States has made it even simpler: it has provided, and will provide, verbatim translations of the specific portions of the calls that it may rely upon in its case-in-chief.  Thus, there has been, and will be, no secret as to the subset of calls upon which the United States may rely in its case-in-chief.

coconspirators did not warrant a bill of particulars); United States v. Shabazz, 995 F. Supp. 1109, 1115 (D. Or. 1998) (same); United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004) ("[T]he Government is not required to furnish the name of all other co-conspirators in a bill of particulars."); United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991) ("As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators."); United States v. Torres, 901 F.2d 205, 233-34 (2d Cir. 1990) (affirming denial of bill of particulars requesting, inter alia, names of known but unnamed conspirators).

Similarly, Doreh requests a statement of "any distinctions" between the charged offenses, the "precise manner" in which he contributed to the charged offenses, the "precise manner" in which transferred funds were to be used, the "precise manner" in which Doreh caused the funds to be transferred, the "precise manner" in which co-defendant Moalin provided his house to terrorists, and details such as "geographical locations, participants, and particularization of acts alleged." [Doreh Mot. at pp. 2-5; Mem. P. & A. at p. 7.] These types of requests fall far outside the bounds of a bill of particular, and impermissibly seek a preview of the United States' trial strategy and case. "Acquisition of evidentiary detail is not the function of a bill of particulars." Torres, 901 F.2d at 234. See also Wong Tai v. United States, 273 U.S.

13

77, 82 (1927) (a defendant is not entitled to "a complete discovery of the Government's case in reference to the overt acts"); <u>United States v. Cooper</u>, 282 F.2d 527, 532 (9th Cir. 1960) (affirming that it is not the function of a bill of particulars "to force [the] Government to spread its entire case before accused"); <u>United States v. W.R. Grace</u>, 401 F. Supp. 2d 1103, 1106 (D. Mont. 2005) (the defendant's right is to know the offense with which he is charged, not the details of how it will be proved); <u>Cook v. United States</u>, 354 F.2d 529, 531 (9th Cir. 1965).  As one court explained:

> The exact dimensions of this conspiracy, like most others, may never be known. Secrecy and concealment are the hallmarks of conspiracy. Granting particulars concerning the formation of the conspiracy, the place and date of each defendant's entrance into the conspiracy, the substance, or a copy, of the conspiracy agreement, and specifications of the manner in which the conspiracy operated would unduly limit the government's proof at trial. Moreover, if defendants were given the minutiae they seek, the slightest discrepancy between the particulars and the evidence at trial would open the door to defendants' attempts to confuse the jury.  Finally, it would be tantamount to a preview of . . . (the government's) case in advance of trial . . . .

<u>United States v. McCarthy</u>, 292 F. Supp. 937, 940 (S.D.N.Y. 1968) (citations and internal quotations omitted).  <u>See also</u> <u>United States v. Perez</u>, 940 F. Supp. 540, 550-51 (S.D.N.Y. 1996) ("[I]t is improper to use a bill of particulars to force the government to disclose the manner in which it will attempt to prove the charges in the indictment or to reveal the precise manner in which those crimes were committed."); <u>W.R. Grace</u>, 401 F. Supp. 2d at 1116-19 (denying in entirety

14

defendants' request for bill of particulars for, among many other things, details regarding locations, persons and terms within the indictment); <u>Shabazz</u>, 995 F. Supp. at 1115; <u>United States v. Dunn</u>, 841 F.2d 1026, 1029 (10th Cir. 1988); <u>United States v. Colson</u>, 662 F.2d 1389, 1391 (11th Cir. 1981); <u>United States v. Crouse</u>, 227 F.R.D. 36, 40-41 (N.D.N.Y. 2005) (matters such as the exact time and place of the overt acts and names of the persons present are not properly the subject of a bill of particulars in a conspiracy prosecution).

Finally, many of Doreh's requests display a fundamental misunderstanding of the essential elements.  For example:

- Doreh seeks a statement as to which overt acts the United States attributes to Counts 1, 2 and 4. [Doreh Mot. at pp. 2-3.]  But, as already explained, the United States need not attribute any overt acts to those counts, as no overt act is required.

- As to Count 4 (Conspiracy to Launder Monetary Instruments), Doreh seeks a statement as "to the date, amount and method of each alleged 'transmission and transfer,' and the victim identities for the crimes perpetrated by the same." [Mem. P. & A. at pp. 8-9.]  But because Count 4 is a conspiracy offense, the United States need not allege or prove <u>any</u> transfer, much less any subsequent crime perpetrated with transferred funds.  The unlawful agreement is the crime, not

15

1             any actual transfer, much less any crime committed

2             with transferred funds.

3   In short, Doreh's motion is replete with requests for

4   information <u>never</u> required, no matter how prolix or detailed

5   the indictment.  For these additional reasons, his motion

6   should be denied.

7                       **IV.**

8         **DOREH'S REQUEST TO JOIN OTHER MOTIONS**

9       Doreh requests to join co-defendant motions that "inure

10  to his benefit."  But he fails to "specifically identify the

11  particular motion(s) to which the joinder applies and the

12  basis for the defendant's standing to raise such motion,

13  where necessary."  CrimLR 47.1(d)(2).  Accordingly, his

14  request for joinder should be denied.

15                      **V.**

16         **LEAVE TO FILE FURTHER MOTIONS**

17      The United States does not object to Doreh filing

18  further motions, provided the motions are based upon

19  information or discovery not available to him at this time.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

# VI.

## CONCLUSION

For the foregoing reasons, the Court should deny Doreh's motion, except where unopposed.

DATED:    January 13, 2012

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

s/ William P. Cole

WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorneys

Attorneys for Plaintiff
United States of America