ORIGINAL

FILED

12 JUN -8 AM 11:44

CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY: [signature] DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

July 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BASAALY SAEED MOALIN (1),<br>aka "Basal"<br>aka "Muse Shekhnor Roble"<br>MOHAMED MOHAMED MOHAMUD (2),<br>aka "Mohamed Khadar"<br>aka "Sheikh Mohamed"<br>ISSA DOREH (3),<br>aka "Sheikh Issa"<br>AHMED NASIR TAALIL MOHAMUD (4),<br><br>Defendants. | Case No. 10CR4246-JM<br><br>I N D I C T M E N T<br>(2nd Superseding)<br><br>Title 18, U.S.C., Sec. 2339A(a) - Conspiracy to Provide Material Support to Terrorists; Title 18, U.S.C., Sec. 2339B(a)(1) - Conspiracy to Provide Material Support to Foreign Terrorist Organization; Title 18, U.S.C., Sec. 1956(h) - Conspiracy to Launder Monetary Instruments; Title 18, U.S.C., Sec. 2339A(a) - Providing Material Support to Terrorists; Title 18, U.S.C., Sec. 2339B(a)(1) - Providing Material Support to Foreign Terrorist Organization; Title 18, U.S.C., Sec. 2 - Aiding and Abetting |

The grand jury charges:

INTRODUCTORY ALLEGATIONS COMMON TO ALL COUNTS

At all times relevant to the Second Superseding Indictment:

1. Al-Shabaab was a violent and brutal militia group that used intimidation and violence to undermine Somalia's Transitional Federal Government (TFG) and its supporters. On or about February 26, 2008, the U.S. Department of State designated "Al-Shabaab" as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and

CPH:WPC:nlv:San Diego
6/7/12

Nationality Act, as amended. On or about March 18, 2008, notice of al-Shabaab's designation as an FTO was published in the Federal Register, and the designation has remained in effect continually. Al-Shabaab was also known by the following names, among others: al-Shabab; Shabaab; the Youth; Mujahidin al-Shabaab Movement; Mujahideen Youth Movement; Mujahidin Youth Movement; MYM; Harakat Shabaab al-Mujahidin; Hizbul Shabaab; Hisb'ul Shabaab; al-Shabaab al-Islamiya; Youth Wing; al Shabaab al-Islaam; al-Shabaab al-Jihaad; and the Unity of Islamic Youth.

2. Throughout al-Shabaab's war against the TFG and its Ethiopian and African Union supporters, al-Shabaab used harassment and targeted assassinations of civilians, improvised explosive devices, mines, mortars, automatic weapons, suicide bombings, and general tactics of intimidation and violence.

3. Until his death on or about May 1, 2008, Aden Hashi Ayrow, aka "Shikhalow, aka "Shiqalow," aka "Sheikhalow," aka "Majadhub," aka "Slim Limbs" (hereinafter, "Ayrow"), was a prominent military leader of al-Shabaab. Ayrow called for foreign fighters to join al-Shabaab in a "holy war" against the Ethiopian and other African forces in Somalia.

4. Defendant BASAALY SAEED MOALIN, aka "Basal," aka "Muse Shekhnor Roble," ("MOALIN") was a taxi cab driver and a resident of San Diego County.

5. Defendant MOHAMED MOHAMED MOHAMUD, aka "Mohamed Khadar," aka "Sheikh Mohamed," ("MOHAMUD") was an Imam at the Al-Ansar mosque (Masjid Al-Ansar) and a resident of San Diego County.

6. Defendant ISSA DOREH, aka "Sheikh Issa," ("DOREH") worked at Shidaal Express, a money transmitting business with offices in San Diego, California.

7. Defendant AHMED NASIR TAALIL MOHAMUD ("NASIR") was a taxi cab driver and a resident of Orange County, California.

Count 1

CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO TERRORISTS

8. The allegations in Paragraphs 1 through 7 are incorporated and re-alleged by reference in this Count.

9. Beginning on a date unknown to the grand jury, and continuing to at least on or about August 5, 2008, within the Southern District of California, and elsewhere, defendants BASAALY SAEED MOALIN, aka "Basal," aka "Muse Shekhnor Roble," MOHAMED MOHAMED MOHAMUD, aka "Mohamed Khadar," aka "Sheikh Mohamed," ISSA DOREH, aka "Sheikh Issa," and AHMED NASIR TAALIL MOHAMUD did unlawfully and knowingly conspire and agree with each other, and with other persons known and unknown to the grand jury, to provide, and to conceal and disguise the nature, source, and ownership of, material support and resources, to wit: currency and monetary instruments, knowing and intending that the material support and resources were to be used in preparation for and in carrying out violations of Title 18, United States Code, Section 956, conspiracy to kill persons in a foreign country, and Title 18, United States Code, Section 2332a(b), conspiracy to use a weapon of mass destruction outside of the United States.

//

//

//

**Methods and Means**

10. The methods and means by which the defendants sought to accomplish the objects of the conspiracy included, among others, the following:

a. Defendant MOALIN would communicate with Ayrow via telephone concerning operations and attacks planned and carried out, and to be carried out, in Somalia by Ayrow and al-Shabaab, and concerning funds needed by al-Shabaab.

b. Defendants MOALIN, MOHAMUD, DOREH, NASIR and others would transmit money from California to Ayrow and al-Shabaab to fund and support fighters, and their operations and attacks, which included the use of explosives, land mines, and bombs.

c. Defendants MOALIN, MOHAMUD, DOREH, NASIR and others would conceal and disguise the source, amount, nature and ownership of the funds transmitted to Somalia, and would structure the money transfers to evade and avoid record-keeping requirements.

d. When engaging in telephone conversations discussing Ayrow, al-Shabaab, the attacks, the operations and the money transmissions, defendants MOALIN, MOHAMUD, DOREH, NASIR and others would use code names and code words to disguise references to Ayrow, al-Shabaab, the operations, and the money transmissions.

e. Following Ayrow's death, defendants MOALIN, MOHAMUD, DOREH, NASIR and others would continue to transmit

funds from San Diego, California, to Somalia to support al-Shabaab.

f. Following Ayrow's death, defendants MOALIN, MOHAMUD, DOREH, NASIR and others would also transmit funds to other militias engaged in violence against the TFG and its supporters.

g. The funds transmitted to Somalia would include the following approximate amounts on or about the following dates:

| Date: | Amount: |
|---|---|
| 1/1/08 | $1,950 |
| 1/1/08 | $1,950 |
| 2/13/08 | $1,300 |
| 2/13/08 | $700 |
| 4/23/08 | $1,900 |
| 4/23/08 | $1,100 |
| 7/15/08 | $1,250 |
| 7/15/08 | $1,030 |
| 7/23/08 | $1,860 |
| 7/23/08 | $1,650 |
| 8/5/08 | $860 |
| 8/5/08 | $350 |

//

//

//

//

//

**Overt Acts**

11. In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

a. On or about December 21, 2007, Aden Hashi Ayrow ("Ayrow") advised defendant MOALIN ("MOALIN") by telephone that he urgently needed several thousand dollars. Defendant MOALIN replied that he would take care of the issue swiftly with "the cleric" and with "Sheikh Issa."

b. On or about December 21, 2007, defendant MOALIN advised defendant DOREH by telephone that "[o]ne dollar a day per man" was needed for the forces.

c. On or about December 22, 2007, defendant MOALIN advised defendant NASIR by telephone that "the young men who are firing the bullets" needed money for the forces in Burhakaba, Somalia, who had "killed 60" and destroyed up to five vehicles in the previous month.

d. On or about January 20, 2008, after telling defendant MOALIN that "we planted a land mine" for an individual "who was traveling on that road; he was almost hit," Ayrow instructed defendant MOALIN by telephone to tell "Sheikh Mohamed" that "he must let us know the amount of money we can expect every month, even if it is one hundred dollars."

e. On or about February 13, 2008, defendants MOALIN, DOREH and MOHAMUD caused the transfer of $2,000 from San Diego, California, to Somalia.

f. On or about February 14, 2008, defendant MOALIN told Ayrow by telephone that "Yusuf Mohamed Ali" was the recipient name used to transfer a total of $2,000 to Ayrow.

g. On or about April 12, 2008, Ayrow told defendant MOALIN by telephone that "it is the time to finance the jihad" and that "if we had bullets for this enemy we would have destroyed them."

h. On or about April 12, 2008, defendant MOALIN told an individual by telephone that "if they are to eliminate those men" then ". . . we must send someone to talk to the people; we can find thirty men who can pay small amounts."

I. On or about April 17, 2008, defendant MOALIN told defendant MOHAMUD by telephone that "calls are coming from the man" and that defendant MOHAMUD should hold back twenty or thirty trusted people at the mosque to tell them to contribute money.

j. On or about April 23, 2008, defendants MOALIN, DOREH and MOHAMUD caused the transfer of approximately $3,000 from San Diego, California, to Somalia.

k. On or about April 24, 2008, defendant MOALIN advised Ayrow by telephone that the "three bundles" [code for $3,000] were sent from San Diego.

l. On or about July 8, 2008, defendant DOREH advised defendant MOALIN by telephone that the money had been sent, and that "Dhunkaal Hersi" was the code name used as the sender's name.

m. On or about July 13, 2008, after being advised by uncharged co-conspirator #1 in Somalia that it was difficult to replace ammunition and that each rocket-propelled grenade cost $270, defendant MOALIN told uncharged co-conspirator #1 by telephone that "five cartons" [code for $5,000] were on their way, but would be broken into several transfers.

n. On or about July 15, 2008, defendant DOREH caused the transfer of $2,280 from San Diego, California, to Somalia.

o. On or about July 18, 2008, defendant MOALIN and defendant NASIR discussed over the telephone that they would "lay low" and would proceed with the financial support under the "pretense" of helping the poor.

p. On or about July 23, 2008, defendant MOALIN caused the transfer of $1,650 from San Diego, California, to Somalia.

All in violation of Title 18, United States Code, Section 2339A(a).

//

//

//

//

//

//

Count 2

CONSPIRACY TO PROVIDE MATERIAL SUPPORT
TO FOREIGN TERRORIST ORGANIZATION

12. The allegations in Paragraphs 1 through 7 are incorporated and re-alleged by reference in this Count.

13. Beginning on or about March 18, 2008, and continuing to at least on or about August 5, 2008, within the Southern District of California, and elsewhere, and occurring in and affecting interstate and foreign commerce, defendants BASAALY SAEED MOALIN, aka "Basal," aka "Muse Shekhnor Roble," MOHAMED MOHAMED MOHAMUD, aka "Mohamed Khadar," aka "Sheikh Mohamed," ISSA DOREH, aka "Sheikh Issa," and AHMED NASIR TAALIL MOHAMUD did unlawfully and knowingly conspire and agree with each other, and with other persons known and unknown to the grand jury, to provide material support and resources, to wit: currency and monetary instruments, to a foreign terrorist organization, namely, al-Shabaab, which has been designated as a foreign terrorist organization since on or about February 26, 2008, knowing that the organization was designated as a terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)) and that the organization had engaged and was engaging in terrorist activity and terrorism.

14. The methods and means by which the defendants sought to accomplish the objects of the conspiracy included, among others, the allegations in Paragraph 10(a.) through 10(e.), which are incorporated

//

//

//

//

and re-alleged by reference in this Count, as well as the transfer of funds from the United States to Somalia in the following approximate amounts on the following dates:

| Date: | Amount: |
| --- | --- |
| 4/23/08 | $1,900 |
| 4/23/08 | $1,100 |
| 7/23/08 | $1,650 |
| 8/5/08 | $350 |

All in violation of Title 18, United States Code, Section 2339B(a)(1).

Count 3

CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS

15. The allegations in Paragraphs 1 through 7 and 10 through 11 are incorporated and re-alleged by reference in this Count.

16. Beginning on a date unknown to the grand jury, and continuing to at least on or about August 5, 2008, defendants BASAALY SAEED MOALIN, aka "Basal," aka "Muse Shekhnor Roble," MOHAMED MOHAMED MOHAMUD, aka "Mohamed Khadar," aka "Sheikh Mohamed," ISSA DOREH, aka "Sheikh Issa," and AHMED NASIR TAALIL MOHAMUD did unlawfully and knowingly conspire and agree to transmit and transfer monetary instruments and funds from a place in the United States to a place outside the United States, to wit: Somalia, with the intent to promote the carrying on of specified unlawful activities, to wit: providing material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B(a)(1); providing material support to terrorists, in violation of Title 18, United States Code, Section 2339A(a); and conspiracy to kill persons in a foreign country,

in violation of Title 18, United States Code, Section 956; all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (h).

Count 4

PROVIDING MATERIAL SUPPORT TO TERRORISTS

17. On or about January 3, 2008, within the Southern District of California, and elsewhere, defendant BASAALY SAEED MOALIN, aka "Basal," aka "Muse Shekhnor Roble," did unlawfully and knowingly provide and attempt to provide material support and resources, to wit: a house in Somalia, knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956, conspiracy to kill persons in a foreign country; all in violation of Title 18, United States Code, Section 2339A(a).

Count 5

PROVIDING MATERIAL SUPPORT TO FOREIGN TERRORIST ORGANIZATION

18. The allegations in Paragraphs 1 through 7 are incorporated and re-alleged by reference in this Count.

19. On or about April 23, 2008, within the Southern District of California, and elsewhere, and occurring in and affecting interstate and foreign commerce, defendants BASAALY SAEED MOALIN, aka "Basal," aka "Muse Shekhnor Roble," MOHAMED MOHAMED MOHAMUD, aka "Mohamed Khadar," aka "Sheikh Mohamed," and ISSA DOREH, aka "Sheikh Issa," did unlawfully and knowingly provide and attempt to provide material support and resources, to wit: approximately $3,000 in currency and monetary instruments, to a foreign terrorist organization, namely, al-Shabaab, which has been designated as a foreign terrorist organization since on or about February 26, 2008, knowing that the organization was designated as a terrorist organization (as defined in Title 18, United

States Code, Section 2339B(g)(6)) and that the organization had engaged and was engaging in terrorist activity and terrorism; in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

DATED: June 8, 2012.

A TRUE BILL:

Foreperson

LAURA E. DUFFY
United States Attorney

By:
WILLIAM P. COLE
Assistant U.S. Attorney

By:
CAROLINE P. HAN
Assistant U.S. Attorney