**JOSHUA L. DRATEL**
Admitted *Pro Hac Vice*
**ALICE L. FONTIER**
California State Bar No. 229994
JOSHUA L. DRATEL, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Telephone:  (212) 732-0707

Attorneys for Basaaly Moalin

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER )**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-4246 (JM) |
| Plaintiff, | |
| v. | MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO TAKE DEPOSITIONS PURSUANT TO RULE 15 |
| BASAALY MOALIN, *et. al* | |
| Defendant. | |

**Introduction**

This Joint Memorandum of Law is respectfully submitted in support of defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh, and Ahmed Nasir Taalil Mohamud's, motion, pursuant to Rule 15, Fed.R.Crim.P, for leave to take depositions of eight foreign prospective defense witnesses outside the United States.

As set forth below, and in the accompanying July 20, 2012 Declaration of Alice L. Fontier, Esq. (which is respectfully incorporated by reference herein), as well as in the accompanying *ex parte in camera* July 20, 2012, Declaration of Alice L. Fontier, Esq., the eight prospective defense witnesses will provide testimony that is both relevant and material to the defense.  Also, in light of the "exceptional circumstances" present in this case, and the fact that the depositions should be permitted "in the interest of

1

1  justice," it is respectfully submitted that the motion should be granted in its entirety.

2  <center>**Statement of the Facts**</center>

3  The eight prospective defense witnesses are Somali nationals, Najib Mohammad, Farah Shidane,

4  Abukar Dahir Mohamed, Sheik Abdur Rahman, Sharif Qorey, Dr. Bashir Ahmed Salad, Osman Isse Nor,

5  and Hassan Mohamud Guled.  Each of these witnesses has agreed to be deposed in Mogadishu, Somalia.

6  The Indictment alleges that the defendants provided material support, in the form of money (and

7  other property, namely, Mr. Moalin's house in Somalia), to *al-Shabaab*.  The allegations against the

8  defendants rest primarily on the government's contention that Mr. Moalin was in direct contact with Aden

9  Ayrow, one of *al-Shabaab*'s leaders.  The Indictment also asserts that after Aden Ayrow was killed on

10  May 1, 2008, Mr. Moalin sought out additional persons affiliated with *al-Shabaab*, to whom he could send

11  money.  After Mr. Ayrow's death, the government claims that Mr. Moalin transferred money to Farah

12  Yare and Omar Mattan, for the purpose of supporting *al-Shabaab*.

13  The eight prospective witnesses are all people to whom Mr. Moalin transferred money, or who

14  possess direct knowledge of how money that the defendants transferred to Somalia was spent. For

15  instance, in FD-302, dated October 25, 2010, attached to the Fontier Dec., as Exhibit 3, the FBI lists

16  sixteen receipts taken from the Shidaal express that "are of interest to the FBI either because of the amount

17  of the money being transferred ($500 or more), or due to the identity of the intended recipient."  Four of

18  the recipients identified as "being of interest" are among the eight prospective defense witnesses – Abukar

19  Dahir Mohamed, Najib Mohammad, Farah Shidane, and Sharif Qorey.[1] The remaining recipients can be

20  identified by the prospective witnesses, and their relationship to Mr. Moalin can also be described.

21  Similarly, as set forth in detail in the *ex parte* Fontier Dec., each of the money transfers that are identified

22  in the Superseding Indictment was provided to one of the prospective defense witnesses, or the recipient

23  can be identified by one of the prospective defense witnesses.  The witnesses will also explain how this

24  money was used, and demonstrate that it was not used to support *al-Shabaab*.

25  Thus, the witnesses will refute the government's allegations that any of the defendants supported

26  *al-Shabaab*.  The relevance and materiality of each of the prospective witnesses' testimony is set forth in

27  detail in the accompanying *ex parte in camera* July 9, 2012, Declaration of Alice L. Fontier, Esq., (which

28

---

[1] The specific transfers are discussed in greater detail in the *ex parte* Fontier Dec.

<center>2</center>

10cr4246 (JM)

1   is also respectfully incorporated by reference herein).

2                                  **ARGUMENT**

3         **THE "EXCEPTIONAL CIRCUMSTANCES" IN THIS CASE**
          **AS WELL AS THE "INTEREST OF JUSTICE," JUSTIFY**
4         **GRANTING DEFENDANTS' MOTION FOR LEAVE TO**
          **TAKE DEPOSITIONS PURSUANT TO RULE 15, FED.R.CRIM.P.**

5   **A.**      ***The Standards Governing Depositions Taken Pursuant to Rule 15, Fed.R.Crim.P.***

6         The standards governing applications to take depositions pursuant to Rule 15, Fed.R.Crim.P., are

7   relatively straightforward.  Rule 15 itself provides in pertinent part that

8               (a) **When Taken.**  Whenever due to exceptional circumstances of the case it
9          is in the interest of justice that the testimony of a prospective witness of a
           party be taken and preserved for use at trial, the court may upon motion of
10         such party and notice to the parties order that testimony of such witness be
           taken by deposition and that any designated book, paper, document, record,
11         recording, or other material not privileged, be produced at the same time and
           place.

12  Rule 15(a), Fed.R.Crim.P.

13        As a general matter, a court should grant a deposition when it "appears that  (a) the prospective

14  witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness'

15  testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of

16  justice." Rule 15, Fed.R.Crim.P., Advisory Committee Note., *and United States v. Rosen*, 240 F.R.D. 204,

17  208 (E.D.Va.,2007).

18        However, as the Ninth Circuit has repeatedly noted, the decision

19           "[w]hether to grant or deny a motion to depose a proposed witness in a
20        criminal trial is discretionary."  *Furlow v. United States,* 644 F.2d 764, 767
          (9th Cir.1981).  "The district court retains broad discretion in granting a
21        Rule 15(a) motion, and considers the particular circumstances of each case
          to determine whether the 'exceptional circumstances' requirement has been
22        satisfied." *United States v. Farfan-Carreon,* 935 F.2d 678, 679 (5th
          Cir.1991).

23  *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998).

24        Also, the Ninth Circuit has declared that in criminal cases depositions may not be used solely for

25  discovery, and a deposition is only proper if the witness may be unavailable to testify at trial.  *United*

26  *States v. Cutler*, 806 F.2d 933, 936 (9th Cir. 1986), *citing United States v. Rich,* 580 F.2d 929, 933-34 (9th

27  Cir.1978).  *See also United States v. Trumpower*, 546 F. Supp.2d 849, 853 (E.D. Cal. 2008). However,

28  "Rule 15(a) does not require any conclusive showing of 'unavailability' or 'material testimony' before a

                                           3                          10cr4246 (JM)

1  deposition can be taken in a criminal case. Rule 15(a) only requires that the trial court find that due to

2  exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken

3  and preserved for possible use at trial. Fed.R.Crim.P. 15(a)."  *United States v. Omene*, 143 F.3d 1167,

4  1170 (9th Cir. 1998).  Also, as the Court in *Trumpower* noted, "[i]n addition, the rule contemplates a party

5  taking the deposition of only his own witness, a requirement that comports with the purpose of preserving

6  testimony."  546 F. Supp.2d at 853.

7         Consequently, the Court must determine whether "exceptional circumstances" exist, whether the

8  witness testimony will be used at trial rather than for discovery, and whether the witness is likely to be

9  unavailable.  As set forth **post**, and for the reasons in the *ex parte* declaration of Alice L. Fontier, these

10 standards are clearly satisfied in this case.  Accordingly, it is respectfully submitted that the Court should

11 grant the Joint Motion for Depositions Pursuant to Rule 15, Fed.R.Crim.P.

12 **B.**      *Response to the Order of the Court, Dated July 12, 2012*

13        The Court, by Order dated July 12, 2012 (hereinafter "Order"), attached to the Fontier Dec. as

14 Exhibit 4, stated that "Defendants must also provide competent evidence to show that the deposition

15 procedures in the foreign country, as to reliability and trustworthiness, are compatible with fundamental

16 issues of fairness.  See Societe Nationale Industrielle Aerospoatiale v. United Sattes Dist. Ct., S.D. Iowa,

17 482 U.S. 522 (1987).  Any motion for depositions must identify the applicable treaty or other applicable

18 law applying to Defendants' depositions."

19        In *Aerospoatiale*, the Supreme Court addressed the question of "the extent to which a federal

20 district court must employ the procedures set forth in the [Hague] Convention when litigants seek answers

21 to interrogatories, the production of documents, and admissions from a French adversary over whom the

22 court has personal jurisdiction."  482 U.S. at 524.  As an initial matter, *Aerospoatiale* is a civil case,

23 addressing the Rules of Civil Procedure, and does not govern the taking of a Rule 15, Fed.R.Crim.P.,

24 deposition in a criminal case.  Further, the issue addressed in *Aerospoatiale* was the seemingly

25 contradictory nature of some provisions of civil procedure set forth in the Hague Convention and the

26 Federal Rules of Civil Procedure.  *Id*., at 533.

27        As the Court in *Aerospoatiale* noted, because the United States was a signatory to the Hague

28 Convention it was federal law, and therefore applied to the production of civil discovery.  *Id*.  In addition,

1 the Court ultimately held that the Hague Convention was not intended to, and did not override or alleviate

2 any of the Federal Civil Rules of Procedure, even where those rules were "more liberal" than the

3 Convention. *Id.*, at 538.

4      While the holding of *Aerospoatiale* does not dictate or control the taking of Rule 15,

5 Fed.R.Crim.P., depositions, the logic of its ruling is instructive. The Court held that the Federal Rules of

6 Civil Procedure governed the production of discovery in a foreign country. Similarly here, the Federal

7 Rules of Criminal Procedure, and not a treaty, govern the taking of depositions in a foreign country. In

8 addition, Somalia is not a party to any Mutual Legal Assistance Treaties (MLAT) or Mutual Legal

9 Assistance Agreements (MLAAs) with the United States, or any other treaty or international agreement.

10 *See* www.state.gov/j/inl/rls/nrcrpt/2012/vol2/184110.htm. Thus, there is no treaty that would or could

11 control the taking of depositions in Somalia.

12      The Court also asks the Defendants to provide competent evidence to assure that the depositions

13 are "compatible with fundamental issues of fairness." Order at 2. The defendants respectfully submit that

14 the taking of foreign depositions is mandated by fundamental fairness and the right to present a defense.

15 The Sixth Amendment guarantees the right "to be confronted with the witnesses against him; [and] to have

16 compulsory process for obtaining witnesses in his favor[.]" *U.S. Const, amend. VI.* The Supreme Court

17 has explained that "[the right to offer the testimony of witnesses, and to compel their attendance, if

18 necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the

19 facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*,

20 388 U.S. 14, 19 (1967) (holding that the right is so fundamental that it applies to the states through the

21 incorporation clause of the Fourteenth Amendment). Here, the necessary defense witnesses reside in

22 Somalia and cannot be brought to the Court through the use of a subpoena. Thus, it is necessary to take

23 depositions of these witnesses in Somalia, to do otherwise would deny the defendants the right to present a

24 defense.

25      Also, in *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Court, in reversing the Mississippi

26 courts' exclusion of a third party's confessions (to the crime for which the defendant was charged) because

27 the statements were not, as required by Mississippi jurisprudence, against the declarant's *pecuniary*

28 *interest*, pointed out that the excluded testimony "was critical to . . . the defense[,]" and declared that

1        where constitutional rights directly affecting the ascertainment of guilt are
implicated, the hearsay rule may not be applied mechanistically to defeat the
2        ends of justice.

3 *Id.*, at 302.

4       That same principle applies here to the prospective defense witnesses.  The constitutional right to

5 present a defense should not be impeded by a mechanistic application of the Rules of Procedure, or any

6 logistical difficulties associated with the taking of the depositions.  Otherwise, as in *Chambers*, the

7 defendants will be "denied . . . a trial in accord with traditional and fundamental standards of due process."

8 *Id*.

9       In addition, the taking of Rule 15 depositions is regularly permitted in various forms.  Some

10 examples include:

11      ·    *United States v. Salim*, 855, F.2d 944 (2d Cir. 1988) (allowing government depositions of

12 witnesses in France when all questioning was done by a foreign judicial officer and American attorneys

13 could only submit questions in writing; and finding no Confrontation Clause violation when the defendant

14 was not physically present for the deposition);

15      ·    *United States v. Sturman*, 951 F.2d 1466 (6th Cir. 1991) (affirming use of foreign deposition

16 where parties were required to submit written questions to a magistrate; and allowing testimony to be used

17 at trial even when there was no oath given to deponent when he was advised of the penalties of false

18 testimony);

19      ·    *United States v. Casamento*, 887 F.2d 1141, 1174 -1175 (2nd Cir.1989) (admitting

20 government's foreign deposition testimony taken in Switzerland even when there was no oath given

21 because the deponents promised to tell the truth and had a "respectful attitude" toward the proceedings);

22      ·    *United States v. Siddiqui*, 235 F.3d 1318, 1324 (11th Cir. 2000) (government's foreign

23 deposition testimony is admitted even when proceeding is conducted in a foreign language and a judicial

24 officer asks questions);

25      ·    *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) (finding no Confrontation Clause

26 violation and allowing videotape of government's foreign deposition testimony at trial even when

27 defendant was not physically present at the videotaped deposition);

28      ·    *United States v. Abu Ali*, 528 F.3d 210, 239 (4th Cir. 2008) (finding no Confrontation Clause

1   violation and allowing evidence of government's foreign deposition testimony when defendant was not

2   physically present, and citing the terrorism allegations as a reasonable justification for defendant not being

3   present)

4       ·   *United States v. West,* 2010 WL 3324886, 4 (N.D.Ill.,2010) (finding videolink participation

5   in Rule 15 deposition in Kabul to satisfy Confrontation Clause requirements)

6       ·   *United States v. McKeeve,* 131 F.3d 1, 7 -8 (1st Cir. 1997) (no Confrontation Clause violation

7   when defendant could only participate via a live telephone line during government's Rule 15 deposition in

8   England).

9           The Court also requested information pertaining to the logistics of the depositions.  The specifics

10  are addressed in detail in the Fontier Dec. at Point 5.  In sum, the depositions will be videotaped, then

11  transcribed, a Somali Civilian Court Magistrate will issue an oath, there will be a certified translator

12  present, and the government will be given the opportunity to appear and cross-examine all of the

13  witnesses.  In addition, the depositions will be taken in a secure facility that is not within the confines of

14  the city of Mogadishu, but is in the African Union controlled area surrounding the airport.  The facility is

15  safe and regularly houses visitors that are members of the United States government and other foreign

16  governments.  Two defense counsel in this case have also stayed at the facility without incident.

17          Accordingly, the defendants submit that the requirements of Rule 15, Fed.R.Crim.P., have been

18  met, and this Court should grant the request to take foreign depositions.

19  **C.**      ***"Exceptional Circumstances" Are Present In This Case***

20          The Ninth Circuit has stated that "the facts of each case must be separately considered to determine

21  whether the exceptional circumstances contemplated by Rule 15(a) exist, justifying the deposition[.]

22  *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1569 (9th Cir. 1989) (fugitive status is not an

23  automatic bar to the granting of a Rule 15 deposition).  In making this determination the District Court

24  "focuses on:  (1)  the prospective unavailability of the witness at trial;  (2)  the good faith effort by the

25  movant to obtain the witnesses' presence at trial;  (3)  a demonstration by the movant that the expected

26  testimony would be favorable;  and (4)  whether the deponents would be available for deposition and

27  willing to testify."  *Trumpower*, 546 F. Supp.2d at 853, *citing United States v. Zuno-Arce,* 44 F.3d 1420,

28  1425 (9th Cir.1995).

1    Similarly, in applying the language of Rule 15(a), the Second Circuit has explained that "[i]t is

2   well-settled that the 'exceptional circumstances' required to justify the deposition of a prospective witness

3   are present if that witness' testimony is material to the case and if the witness is unavailable to appear at

4   trial." 739 F.2d at 709 (citations omitted).  *See also United States v. Gigante*, 166 F.3d 75, 81 (2d Cir.

5   1999).

6    Here, as set forth in the accompanying July 20, 2012 Declaration of Alice L. Fontier, Esq., at ¶¶ 4-

7   38, the circumstances of this case are unquestionably "exceptional."  In addition to the international scope

8   of this case, the fact that critical events occurred in Somalia – including the fact that all those who received

9   money from the defendants reside(d) in Somalia – complicates matters considerably in light of the lack of

10  diplomatic relations between the United States and Somalia.

11   Indeed, Somalia has lacked an effective national government since 1991.  The United States has

12  not maintained any formal diplomatic presence in Somalia since that time.  The current Transitional

13  Federal Government of Somalia controls only a small, heavily secured, section of Mogadishu.  Travel by

14  Somali nationals to the United States is not regularly permitted, and is not feasible.

15   Thus, absent the depositions, the testimony of the eight Somali witnesses, material to the defense,

16  will be unavailable to the defendants.  The United States Department of State requires that all travelers to

17  the United States possess a valid travel visa, and in order to obtain such a visa a foreign citizen must apply

18  to the consulate or embassy with jurisdiction over his or her country of permanent residence.  However,

19  the U.S. does not maintain an embassy or consulate in Somalia, or with jurisdiction over Somalia, and

20  because these diplomatic ties have been severed, it is not possible for the eight Somali nationals who

21  would testify at trial to obtain visas and travel to the U.S.

22   In addition, there exists in this case the added problem of witness safety and security –  not only

23  *physically*, but also, with respect to foreign defense witnesses, the prospect of arrest, subpoena, or other

24  process by the United States government (even though none of the eight is an unindicted co-conspirator).

25  Moreover, even if the witnesses are not unindicted co-conspirators, or have any other criminal liability in

26  this or any other matter, that does not mean at all that they do not harbor fears – objectively well-founded

27  or not, but which are certainly of genuine concern to the witnesses – of arrest and/or harassment by the

28  United States government should they testify in the United States on behalf of the defendants.

1    Consequently, the "exceptional circumstances" of this case amply justify the taking of depositions

2  pursuant to Rule 15.  In addition, such depositions would clearly be in the "interest of justice."  As noted

3  in previous papers and above, the problems inherent in obtaining evidence from far-flung locales that are

4  not conducive to allowing its citizens to travel impairs the defendants ability to present a defense.  Thus,

5  the relief provided in Rule 15 is necessary "in the interest of justice[,]" since without it the defendants will

6  be deprived of an opportunity to present important witnesses and their testimony.

7  **D.**    ***The Prospective Witnesses' Testimony Is Relevant and Material to the Defense At Trial***

8    The accompanying July 20, 2012 *Ex Parte In Camera* Declaration of Alice L. Fontier, Esq. details

9  the relevance and materiality of the prospective witnesses' testimony.  The standard for materiality under

10  Rule 15 is objective, and "requires a showing that the evidence would enable the defendant to alter the

11  quantum of proof significantly in [his] favor."  *United States v. Lafontaine*, 2000 WL 890380 at *2

12  (S.D.N.Y. July 5, 2000), *citing United States v. Maniktala*, 914 F.2d 25, 28 (2d Cir. 1991).[2]  However, a

13  defendant "does not have to prove that the evidence would result in an acquittal."  *Lafontaine*, at *2, *citing*

14  *United States v. Bronston*, 321 F. Supp. 1269, 1272 (S.D.N.Y. 1972).

15    As the Ninth Circuit has stated,

16    Rule 15(a) does not require any conclusive showing of 'unavailability' or
      'material testimony' before a deposition can be taken in a criminal case.
17    Rule 15(a) only requires that the trial court find that due to exceptional
      circumstances it is in the interest of justice  that the testimony of a
18    prospective witness be taken and preserved for possible use at trial." *United
      States v. Omene,* 143 F.3d 1167, 1170 (9th Cir.1998); *see also United States*
19    *v. Sines,* 761 F.2d 1434, 1439 (9th Cir.1985) (noting that Rule 15 does not
      require a "conclusive showing of 'unavailability' before a deposition can be
20    taken in a criminal case.").

21

22  _____

23    [2] In *Lafontaine*, the District Court noted that the motion must be made in timely fashion,
    although "the Rule specifies no time within which the motion must be made." *United States v.*
24  *Lafontaine*, 2000 WL 890380 at *1-2 ("Rule 15 sets no deadline for the filing of a motion such
    as this").  In *Lafontaine*, however, the application could have been made much earlier, while here
25  it is being made as expeditiously as possible, and at the time that was discussed and agreed upon
    before the Court.  Thus, *Lafontaine* is distinguishable.  *See also United States v. Chisud*, 2000
26  WL 1449873 at *1 (S.D.N.Y. September 27, 2000) (application was untimely because there was
    not any explanation for the delay).  In addition, *Lafontaine* is inapposite because in that case the
27  "defendant ha[d] not shown that [the witness] in fact [was] unavailable[]" since did not show he
    was "unwilling to leave" Canada and appear in a United States court to testify.  2000 WL 890380
28  at *1.  Here, as established **post**, at 5-6, the prospective witnesses are indeed "unavailable."

1  *United States v. Lai Fa Chen*, 214 F.R.D. 578, 579-80 (N.D. Cal. 2003).  Here, as set forth in the *ex parte*

2  Fontier Dec., the testimony of the witnesses is material, relevant, and exculpatory, and therefore it should

3  foreign depositions should be granted.

4        Here, the *Ex Parte In Camera* Declaration easily satisfies the applicable standard for materiality.

5  The witnesses' projected testimony not only addresses specific allegations in the Indictment, but it is also,

6  in the extraordinary context of this case, likely to be unavailable from any other source.  Thus, without the

7  depositions, the defendants will be deprived of important evidence on their behalf.

8  **E.      *The Prospective Witnesses Are Unavailable Under Rule 804(a), Fed.R.Evid.***

9  Rule 15(e) provides in pertinent part that

10        (e) **Use.**  At the trial or upon any hearing, a part or all of a deposition, so far as otherwise
           admissible under the rules of evidence, may be used as substantive evidence if the witness

11        is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence,
           or the witness gives testimony at the trial or hearing inconsistent with that witness'

12        deposition.

13  *See* Rule 15(e), Fed.R.Crim.P.

14        Here, while that determination need not be made at this juncture, in fact it is clear that the eight

15  witnesses are each "unavailable" under the terms of Rule 804(a).[3]  Each of the eight witnesses is a Somali

16  national, currently residing in Somalia, and none have access to a United States Consulate that has the

17  authority to issue a travel visa for Somali nationals.

18        As the Second Circuit explained in *Johnpoll*, "[u]navailability is to be determined according to the

19  practical standard of whether under the circumstances the [party seeking the deposition] has made a good-

20  faith effort to produce the person to testify at trial."  *Johnpoll*, 739 F.2d at 709 (other citations omitted).

21  Thus, the standard is "reasonableness."  *Id*. (other citation omitted).

22        Here, defense counsel has and will make every effort to secure the witnesses' appearance, but do

23  not possess any leverage to compel such appearance.  In fact, in *Johnpoll*, the Second Circuit noted that

---

25        [3] The Ninth Circuit has repeatedly held that a showing of unavailability is not required
     prior to granting a deposition, but is required for its *admission*.  *See e.g. Lai Fa*

26  *Chen*, 214 F.R.D. at 579-80, *and  United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985)
     ("[defendant's] argument confuses the prerequisites for *taking* a deposition under Rule 15 and

27  section 3503 with the prerequisites for *admitting* a deposition into evidence under those
     provisions. The two provisions do not require any conclusive showing of "unavailability" before

28  a deposition can be taken in a criminal case.")

1  "being Swiss nationals in Switzerland, [the witnesses] were not amenable to service of United States

2  process, either by statute or treaty." 739 F.2d at 709.  Therefore, they "could not be said to be personally

3  available for trial within the meaning of Rule 15." *Id*.  *See also United States v. Sindona*, 636 F.2d 792,

4  803 (2d Cir. 1980) ("none of the four witnesses [Italian nationals residing in Europe] were subject to

5  subpoena");  *United States v. Korolkov*, 870 F. Supp. 60, 65 (S.D.N..Y. 1994) (witnesses neither held

6  United States citizenship, nor resided here, so "they [were] not amenable to United States subpoena"),

7  *citing* Rule 17(e)(2), Fed.R.Crim.P.; 28 U.S.C. §1783 (and *Johnpoll*).

8          Similarly, in *United States v. Gonzalez*, 488 F.2d 833, 838 (2d Cir. 1973), Second Circuit, while

9  vacating the conviction on other grounds and remanding the case for a new trial, noted that when a witness

10  was "willing to be deposed but unwilling to travel to the United States to testify[,] . . . the wiser course

11  would have been to grant the motion" for the Rule 15 deposition.  That was the case even though the

12  witness may have been motivated (at least in part) by possible exposure to prosecution in the United States

13  if he appeared.  488 F.2d at 838-39, *accord Hernandez-Escarsega*, 886 F.2d at 1569.

14          In *Sindona*, too, it was sufficient that "two of the prospective witnesses had specifically refused to

15  come to the United States."  636 F.2d at 803.  Thus, "there was ample reason to fear that all four witnesses

16  would fail to appear at the trial."  *Id*.  Since in *Sindona*, the government, in good faith, had relied on those

17  representations, and "made a good faith effort to obtain the witnesses' presence at the trial[,]" 636 F.2d at

18  804, the motion to take the Rule 15 depositions was granted and affirmed on appeal.

19          In addition, defense counsel cannot provide any of the witnesses any guarantees with respect to

20  safe and secure passage.  In similar cases, the government's inability and/or unwillingness to meet a

21  foreign witness' demands was sufficient to render that witness "unavailable" for purposes of Rule 15.[4]

22  *See, e.g., Johnpoll*, 739 F.2d at 709 [government's refusal to accede to witnesses' demands (for

23  compensation and accommodations) was "not unreasonable"];  *United States v. Korolkov*, 870 F. Supp. at

24  65 (government indicated witnesses refused to appear despite offers of payment for expenses).

25          Accordingly, it is respectfully submitted that there exist in this case "exceptional circumstances"

26  _____

27          [4] The defense is amenable to discussion of safe passage for the witnesses, if that is the
    government's preference.  However, the witnesses would each request that the government
28  guarantee that they will be free from arrest and prosecution and other process, and that the
    government pay the costs of their travel.

1  that warrant Rule 15 depositions "in the interest of justice" in order that the testimony of the eight

2  unavailable Somali prospective defense witnesses be preserved for trial.

3                                          **Conclusion**

4        For all the reasons set forth above, and in all papers previously filed, it is respectfully submitted

5  that the defendants's joint motion for leave to take depositions pursuant to Rule 15, Fed.R.Crim.P., should

6  be granted in its entirety.

7  Dated: July 20, 2012
          New York, New York

8

9                                          Respectfully submitted,

10                                          S/ Alice L. Fontier
                                           **JOSHUA L. DRATEL**
                                           **ALICE L. FONTIER**
11                                         DRATEL & MYSLIWIEC, P.C.
                                           2 Wall Street, 3rd Floor
12                                         New York, NY 10005

13                                         *Attorneys for Basaaly Moalin*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28