**Joshua L. Dratel**
admitted *pro hac vice*
**Alice L. Fontier**
State Bar # 229994
JOSHUA L. DRATEL, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707 (telephone)
(212) 571-3792 (facsimile)

Attorneys for Basaaly Moalin

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 10 Cr. 4246 (JM) |
| | : | Electronically Filed |
| – against – | : | |
| | : | DECLARATION IN |
| BASAALY MOALIN, *et. al.* | : | SUPPORT OF JOINT MOTION |
| | : | TO TAKE DEPOSITIONS PURSUANT TO |
| | | RULE 15, FED.R.CRIM.P. |
| Defendant. | : | |
| | : | |

------------------------------------------------------x

Alice L. Fontier, Esq., pursuant to 28 U.S.C. §1746, hereby affirms under penalty of perjury:

1. I am an attorney, admitted to practice in the Southern District of California, and together with Joshua L. Dratel, I represent Basaaly Moalin in the above-captioned matter.

2. All statements herein are made upon information and belief, the source of the information and the grounds for the belief being a review of the materials provided by the government, interviews of prospective witnesses, and a review of the relevant law.

3. The bases for these motions are set forth in detail in the accompanying Memorandum of Law, and the July 20, 2012 *ex parte in camera* Declaration of Alice L. Fontier. The defendants respectfully move for an Order granting depositions, pursuant to Rule 15, Fed.R.Crim.P., of eight Somali witnesses who are unavailable for trial.

4. Attached as Exhibits to this Declaration, and relevant to Mr. Moalin's motion are:

   a. Superseding Indictment in this case, attached as Exhibit 1;

   b. Homepage of SKA-International Group website, attached as Exhibit 2;

1      c.      FD-302, dated October 25, 2010, attached as Exhibit 3;

2      d.      Order of the Court, dated July 12, 2012, attached as Exhibit 4; and

3      e.      Application for a Search Warrant, dated October 29, 2010, attached as Exhibit 5.

5. In response to the Order of the Court, dated July 12, 2012, the following information is also provided as requested:

     **a.    The proposed witnesses cannot be transported to the United States, because they cannot obtain the necessary travel documents in a timely manner.**[1]

Pursuant to the United States Department of State:[2]

> [a] foreign national or alien entering the U.S. is generally required to present a passport and valid visa issued by a U.S. Consular Official, unless they are a citizen of a country eligible for the Visa Waiver Program, or are a lawful permanent resident of the U.S. or a citizen of Canada. The Visa Waiver Program allows foreign nationals from certain countries[3] to be admitted to the U.S. under limited conditions and for a limited time without obtaining a visa. The foreign national must arrive on an approved carrier (if coming by air or sea), staying no more than 90 days, for pleasure/medical purposes/business, and be able to prove they are not inadmissible. The foreign national is still required to have a passport.

Also, pursuant to the Department of State, Somalis seeking to travel to the United States, must abide by the following conditions:

In general,

> [f]or nonimmigrant visas, generally, the applicant will make an appointment at a convenient U.S. Embassy or Consulate and pay the application fee. The

---

[1] The Court requested information on "(1) why the proposed deponents cannot be transported to the United States; [and] (2) why travel documents cannot be made available to the proposed deponents[,]" as separate issues. However, the inability to obtain travel documents is the reason that the witnesses cannot be "transported" to the United States, so this declaration addresses that singular question.

[2] Information available at: *https://help.cbp.gov/app/answers/detail/a_id/572/~/entering-the-u.s.---documents-required-for-foreign-nationals-%28international*

[3] The following countries are eligible for visa waiver: Andorra, Australia, Austria, Belgium, Brunei, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Iceland, Ireland, Italy, Japan, Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Monaco, The Netherlands, New Zealand, Norway, Portugal Republic of Korea, San Marino, Singapore, Slovakia, Slovenia, Spain, Sweden, Switzerland, and United Kingdom. *See* http://www.cbp.gov/xp/cgov/travel/id_visa/business_pleasure/vwp/faq_vwp.xml

> applicant will have an interview in-person with a consular officer, who will ask questions and review documentation to determine whether the applicant qualifies for a visa. After the interview, and any necessary administrative processing, if the applicant qualifies the U.S. Embassy or Consulate issues a visa.

*Id.*

Further,

> [a]pplicants seeking a nonimmigrant visa may apply at any U.S. embassy; many Somalis choose to apply at U.S. Embassy Nairobi or U.S. Embassy Djibouti (U.S. Embassy Nairobi is the designated embassy for Somalis applying for A or G visas (diplomats, foreign government officials, employees of a designated international organization). ... There is no U.S. Embassy or other U.S. diplomatic presence in Somalia.[4] ... [In addition, the] Department has determined that Somali passports are no longer valid for visa-issuance purposes. Most immigrant visa beneficiaries will not require a passport. Somali nonimmigrant visa beneficiaries will require a passport waiver.

*Id.*

Finally, pursuant to the Department of State,

> Some visa applications require further administrative processing, which takes additional time after the visa applicant's interview by a Consular Officer. Applicants are advised of this requirement when they apply. Most administrative processing is resolved within 60 days of the visa interview. When administrative processing is required, the timing will vary based on individual circumstances of each case. Visa applicants are reminded to apply early for their visa, well in advance of the anticipated travel date.

*Id.*

Thus, while Somali nationals are not barred from applying for a nonimmigrant travel visa, they are very difficult and time-consuming to obtain. The witnesses would each have to travel to Kenya or Djibouti, which in itself may not be possible; apply for a nonimmigrant visa at the U.S. Embassy in Kenya or Djibouti; and finally wait approximately 60 days to determine if the visa application is granted. In addition, "[t]he Department [of State] has determined that Somali passports are no longer valid for visa-issuance purposes." *Id.* This means that a Somali national, holding a Somali passport, must also apply for a passport waiver, which requires additional time.

Complicating the issue, the Department of State warns that if the applicants "do not speak English or a language commonly spoken in the country where you plan to apply, you should be aware that the

---

[4] *See also* http://travel.state.gov/travel/cis_pa_tw/cis/cis_1023.html#registration

interviewing officers' lack of familiarity with local conditions in your country may make it more difficult to demonstrate your qualifications for a visa." *Id.* Only one of the proposed defense witnesses speaks English, and his English is quite limited. Somali is not a language that is commonly spoken in Kenya or Djibouti. Therefore the language barrier of the proposed witnesses would make it more difficult to obtain a travel visa.

Finally, the decision to grant or deny a visa is discretionary and is based on the consular officer's determination that "the applicant is qualified, and there are no security concerns[.]" *Id.* There are no publically available guidelines by which the defense can evaluate the likelihood of the consular officer determining that any or all of the Somali witnesses would or would not pose a security concern. However, the government's apparent current contention that at least three of the proposed witnesses were or are members of *al-Shabaab*, suggests that the Department of State would not be likely to grant travel visas to these individuals.

      **b.**      **Location of the Depositions**

The depositions will take place in the SKA-Somalia secure facility located adjacent to the Mogadishu, Somalia airport. This will also be the housing facility for defense and government counsel, thereby eliminating the need to travel outside of the secure zone. A copy of the homepage of the SKA-International website is attached to this Declaration as Exhibit 2. SKA is a private logistics company that maintains and manages Mogadishu's Adden Adde international airport. SKA provides a unique capability that involves setting up logistics and air services in conflict zones such as Iraq, Afghanistan, and Somalia. The housing facility is located approximately 200 yards from the airport, and is well within the area controlled by African Union (AU) peacekeeping forces. The AU base is approximately 200 yards in the opposite direction from the airport. The SKA facility, the airport, the seaport, and the connecting road are located on the secure road between the airport and the seaport. The facility is guarded at all times by African Union troops and SKA security personnel. Admission to the facility is strictly controlled and pre-registration is required.

      **c.**      **Risks Inherent in Travel to Somalia**

While the Department of State does not recommend travel to Somalia, as previously noted the depositions would take place at the secure SKA-Somalia facility adjacent to the airport. Access to this

1 facility would be pre-arranged.  The airport and its surroundings are tightly controlled by the African
2 Union troops.  Access to the airport is controlled by a series of five checkpoints.  None of the defense
3 counsel, or government attorneys would need to leave this secure facility.

4      Myself, and Ahmed Ghappour stayed at the SKA facility for five days in June, 2012.  The facility
5 was comfortable, secure, and there were no apparent risks to our safety.  Indeed, at the same time that we
6 were in the facility, members of the United States Department of State also stayed at the facility.  In
7 addition, several members of the British High Commission were also staying at SKA.

8      I have contacted the SKA facility and they are able to accommodate all counsel, and necessary
9 support staff for the period in which we will be taking depositions.  In addition, SKA has provided
10 permission to use the conference room on site to conduct the depositions.

11      Accordingly, there is very little risk associated with taking the depositions at the SKA-Somalia
12 facility in Mogadishu, Somalia.

13      **d.     Proposed Procedures for Taking Depositions**

14      Counsel for the defendants have located a certified Somali interpreter who is willing to travel to
15 Mogadishu for the purpose of taking depositions.  The depositions will occur over the course of a week.
16 Each witness will be sworn in by a local Somali magistrate.[5]  Once the witness is under oath, the
17 deposition will proceed as if the witness were in Court.  Defense counsel will conduct a direct-
18 examination, followed by cross-examination by the government.  Counsel for both the defense and the
19 government will make objections as the questioning occurs.

20      A video will be made of the depositions as they are taken.  Upon return to the United States, the
21 videos will be transcribed.  The video and the transcript will then be submitted to the Court.  Prior to
22 admission of the testimony at trial, both parties would seek an opportunity to be heard on objections with
23 respect to the admissibility of witness testimony.

24      WHEREFORE, it is respectfully requested that the Court grant the defendants's Joint Motion in its

---

[5] Counsel have been in contact with a member of the Transitional Federal Government (TFG) who is determining the availability of a local magistrate from the civilian federal Somali court who is empowered under local law to issue an oath.  We have been assured that a magistrate will be available, but without knowing the dates on which the depositions will be taken, we cannot yet identify the magistrate.

1  entirety.

2      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge

3  and belief.  28 U.S.C. §1746.

4  Executed:    July 20, 2012

                      /S/ Alice L. Fontier
                      ALICE L. FONTIER