**FILED**

AUG 2 2 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 10CR4246-JM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER DENYING JOINT MOTION TO TAKE RULE 15 DEPOSITIONS; DENYING MOTION TO STAY** |
| BASAALY MOALIN et al., | ) | |
| Defendants. | ) | |
| | ) | |

        Defendants Basaaly Moalin, Mohamed Mohamed Mohamud, Issa Doreh and
Ahmed Nasir Taalil Mohamud (collectively "Defendants"), pursuant to Federal Rule
of Criminal Procedure 15, jointly move for leave to take depositions of eight foreign
prospective defense witnesses in Somalia.  The Government opposes the motion.  For
the reasons set forth below, the court denies the motion for Rule 15 depositions without
prejudice to reconsidering a further request under Rule 15, or the parties reaching a
stipulation for depositions to proceed, and denies the motion to stay.

## BACKGROUND

        The Second Superseding Indictment ("SSA"), filed on June 8, 2012, charges Five
Counts: (1) Conspiracy to provide material support to terrorists, in violation of 18
U.S.C. § 2339A (all Defendants); (2) Conspiracy to provide material support to a
foreign terrorist organization, in violation of 18 U.S.C. § 2339B (all Defendants); (3)

1    Conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956 (all

2    Defendants); (4) Providing material support to terrorists, in violation of 18 U.S.C. §

3    2339A (defendant Moalin only); and (5) Providing material support to foreign terrorist

4    organization, in violation of 18 U.S.C. § 2339B (defendants Moalin, Mohamud, and

5    Doreh only).

6         Defendants propose taking the depositions of eight Somali nationals: Naji

7    Mohammad, Farah Shidane, Abukar Dahir Mohamed, Sheik Abdur Rahman, Sharif

8    Qorey, Dr. Bashir Ahmed Salad, Osman Isse Nor, and Hassan Mohamud Guled. "Each

9    of these witnesses has agreed to be deposed in Mogadishu, Somalia." (Motion at p.2:5).

10   "The eight prospective witnesses are all people to whom Mr. Moalin transferred money

11   or who possess direct knowledge of how money that the defendants transferred to

12   Somalia was spent." (Motion at p.2:13-14).

13                                   **DISCUSSION**

14        Rule 15 provides the mechanism for taking foreign depositions:

15        (a) When Taken. Whenever due to exceptional circumstances of the case
          it is in the interest of justice that the testimony of a prospective witness of

16        a party be taken and preserved for use at trial, the court may upon motion
          of such party and notice to the parties order that testimony of such witness

17        be taken by deposition and that any designated book, paper, document,
          record, recording, or other material not privileged, be produced at the same

18        time and place.

19   "The district court retains broad discretion in granting a Rule 15(a) motion, and

20   considers the particular circumstances of each case to determine whether the

21   'exceptional circumstances' requirement has been satisfied." United States v. Omene,

22   143 F.3d 1167, 1170 (9th Cir. 1998) (quoting United States v. Farfan-Carreon, 935 F.2d

23   678, 679 (5th Cir.1991)).   The exceptional circumstances requirement of Rule 15

24   means that "only in extraordinary cases will depositions be compelled." United States

25   v. Dillman, 15 F.3d 384, 389 (5th Cir. 1994).  The burden of proof for Rule 15(a)

26   depositions rests with the Defendants. United States v. Zuno-Arce, 44 F.3d 1420, 1424-

27   25 (9th Cir. 1995).

28        In considering whether to permit Rule 15 depositions, the court considers the

1    totality of the circumstances including, but not limited to, timeliness, the availability of

2    the deponents for trial, whether the depositions are for purposes of discovery or for use

3    at trial, the materiality and helpfulness of the proposed deposition testimony, and the

4    safety of United States officials whose safety might be compromised by traveling to the

5    foreign country. See United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000); Zuno-

6    Arce, 44 F.3d at 1424. Furthermore, Defendants must also show that the deposition

7    procedures in the foreign country, as to reliability and trustworthiness, are compatible

8    with fundamental issues of fairness. See Societe Nationale Industrielle Aerospoatiale

9    v. United States Dist. Ct., S.D. Iowa, 482 U.S. 522 (1987). The court now turns to

10   pertinent factors.

11       Availability

12       Defendants contend that the proposed deponents are unavailable because the

13   United States does not maintain formal diplomatic presence in Somalia and the

14   Transitional Federal Government controls only a small section of Mogadishu, and travel

15   to the United States "is not regularly permitted, and is not feasible." (Motion at p.4:11-

16   14). Defendants make no particularized showing as whether any of the proposed

17   deponents even applied for a visa. While conditions in Somalia are beyond challenging,

18   Defendants make no evidentiary showing that a visa would be unavailable to them or

19   that they took any measures to obtain a visa. Rather, in their reply papers Defendants

20   argue that in 2011 Somali nationals faced a 66.8% refusal rate on visitor visa

21   applications and that it would be unlikely for the proposed deponents to receive travel

22   authorization. Defendants then cite anticipated travel costs as being an impediment to

23   the average Somali to travel to the United States. Finally, counsel for Defendants

24   acknowledge that procedures are in place for Somali nationals to obtain both visas and

25   passport waivers and that such procedures are available on the Internet, (Fontier Decl.

26   ¶4), but suggest the statistical and financial concerns have rendered any travel prospects

27

28

05cr2250

1    futile.[1]

2         As noted by the Government, one way to demonstrate unavailability is through

3    affidavits. <u>United States v. Drogoul</u>, 1 F.3d 1546, 1553 (11th Cir. 1993). At a minimum,

4    a defendant must demonstrate "good faith efforts" to obtain the witness' presence at

5    trial. <u>Zuno-Arce</u>, 44 F.3d at 1425. Defendants simply make no showing that the

6    proposed deponents have applied for entry visas. While Defendants need not make a

7    conclusive showing of unavailability, some showing is required.

8         In sum, this factor does not favor granting the Rule 15 motion.

9         <u>Timeliness</u>

10        Defendants contend that this motion is timely because, in part, discovery is on-

11   going, about 1,800 intercepted telephone calls were produced in discovery, the

12   Government only provided transcripts to about 126 telephone calls, the Government has

13   been on notice that Defendants would seek to take Rule 15 depositions, and Defendants

14   moved for Rule 15 depositions at the earliest possible date. The court notes that the

15   Government provided to defense counsel transcripts of the pertinent calls it has

16   identified in 2011 at the latest and that the identities of some if not all of the persons on

17   these calls were known to Defendants from the time the calls were made.

18        Notwithstanding, Defendants first mentioned the prospect of Rule 15 depositions

19   in late 2011 and again at a April 5, 2012 status hearing. This court then immediately

20   referred the matter of possible depositions to Magistrate Judge Gallo even without the

21   Defendants filing a motion for Rule 15 depositions. This court strongly counseled the

22   parties that the matter of depositions would be managed by Magistrate Judge Gallo.

23   Unfortunately the record demonstrates that Defendants never pursued this matter before

24   Magistrate Judge Gallo and some 3 ½ months later filed a Rule 15 motion to be heard

25   in late August and in such a manner that were the depositions allowed the trial date

26   would, as Defendants acknowledge, have to be continued yet again. In light of

27   _____

28     [1] At oral argument, moving counsel represented that the proposed deponents have indicated an
     unwillingness to travel to the United States.

Defendants' longstanding knowledge about the interactions between the proposed deponents and themselves, such a request has not been timely brought.

In sum, this factor does not favor granting the Rule 15 motion.

Materiality/Helpfulness

On this factor, Defendant's strongest argument for the depositions going forward is that these deponents will provide exculpatory evidence to show that the monies provided by Defendants were not intended to assist any terrorist network or organization. (Fontier Decl. ¶¶ 4-38). While the proposed deponents do not provide any declarations regarding the topics of their anticipated testimony, the declaration of attorney Alice Fontier generally describes the anticipated testimony. The court briefly reviews the proposed testimony.[2]

**Najib Mohammed**

Defendants represent that a large number of the recorded telephone calls are between defendant Moalin and Mr. Mohammed, who operated a call center in Somalia. The anticipated testimony would reveal that defendant Moalin would call almost every morning to talk to family members. He would also provide testimony that defendant Moalin would speak with someone referred to as "Shiekalow" who, he believes, was in charge of security in the central region of Somalia.

The court notes that this testimony is not particularly helpful to Defendants because the conversations have been produced to Defendants. Further, testimony that Mr. Mohamed overheard Moalin speaking to someone named "Shiekalow" does not

---

[2] The court is mindful of Defendants' vigorous argument that materiality, for purposes of Rule 15 depositions, must be distinguished from considerations of admissibility such as reliability, credibility, and whether evidence is cumulative. It seems appropriate, however, to juxtapose some evidence proffered by the Government - such as the January 20, 2008 intercept of a conversation between defendant Moalin and "Sheikalow," (Cole Decl. Exh.2), the accuracy and content of which was not disputed as of the filing of this motion - with the proffer from proposed deponents on the question of whether exceptional circumstances exist for the depositions to go forward under Rule 15. In that vein, if much of what is proffered is undisputed (i.e. Somali tribal and cultural history) or is not inconsistent with the Government's theory of wrongdoing (i.e. financial support for worthy causes as well as for the alleged support of al-Shabaab), circumstances become less "exceptional" within the meaning of Rule 15.

1    materially advance the defense theory that Moalin did not speak with Aden Ayrow.
2    Such proposed testimony may carry little weight.

3        In sum, the court concludes that this testimony is not particularly helpful to
4    Defendants.

5        **Farah Shidane, a/k/a "Farah Yare"**

6        Defendants argue that Mr. Shidane is a member of the Ayr clan from the
7    Gelgaduud region and has known Defendant Moalin for many years. (Fontier Decl.
8    ¶11). Mr. Shidane will provide testimony "about the history and development of the
9    local administration, his role in the administration, and his opposition to al-Shabaab.
10   In addition he will state that he received money from Mr. Moalin because he was the
11   treasurer of the development council" and that the monies received by Mr. Moalin were
12   "used to build and maintain the Orphan Care Center, a school in Gurieel, and provided
13   critical humanitarian aid during the drought." (Fontier Decl. ¶12).[3]

14       In response, the Government provides a proffer which, if true, substantially
15   undermines the helpfulness of this evidence. Mr. Shidane is the uncharged co-
16   conspirator No. 1 as alleged in the SSA. Further, recorded conversations provide
17   support for the Government's argument that many of the recorded statements with Mr.
18   Shidane are inculpatory, not exculpatory. (Cole Decl. Exhs.15-18).

19       In sum, the court concludes that this testimony may be helpful to Defendants.

20       **Sheik Abdul Rahman, a/k/a/ "Geedow Qorow"**

21       Mr. Raham, current governor of Dhusamarreb and defendant Moalin's brother-in-
22   law, is anticipated to provide testimony regarding the Ilyes Foundation, Moalin's
23   support for the Ilyes Foundation, and al-Shabaab's opposition to the development of
24   schools and local Governments in Somalia. (Fontier Decl. ¶15). Mr. Rahman would
25   also provide testimony about his opposition to al-Shabaab, the use of defendant

26   _____

27       [3] Defendants also represent that Mr. Shidane is able to provide background information and
     context on the political situation in Somalia. The court notes that there are many sources capable of
28   providing background information and context to the political situation in Somalia.

Moalin's house by Ahlu Suna Wa Jameea, not al-Shabaab, and an individual named "Sheikalow" who is not Aden Ayrow.

The Government responds that the proffered testimony that Ayrow is not "Sheikalow" is inherently unreliable because, for the reasons discussed with respect to Hassan Mohamud Guled, the recorded conversations undermine this proffer. Further, the Government concedes that Moalin was an Ilyes supporter. The court notes that the use of Moalin's house by Ahlu Suna does not necessarily mean that al-Shabaab did not also use the Mogadishu home of defendant Moalin.

In sum, this evidence provides some support for Defendants' theories of the case and is potentially helpful to Defendants.

**Sharif Qorey**

Defendants contend that there are recorded conversations between Mr. Qorey and defendant Moalin, that Moalin permitted members of Ahlu Suna to use his home in Mogadishu and that he remembers "Sheikalow." (Fontier Decl. ¶27, 28).

The Government responds that Defendants already have the recorded conversations, the information regarding "Sheikalow" as someone other than Aden Ayrow has been substantially undermined, and the SSA alleges that Ayrow used the house in Mogadishu, not the compound Moalin was building (with Qorey's help) in Guriceel.

In sum, the court concludes that this information is not particularly helpful to Defendants.

**Dr. Ashir Ahmed Salad**

Defendants represent that Dr. Salad, the head Somali Iman, has taught at the Islamic International University where he met Defendant Mohamud, and that he has stayed in touch with Mohamud and other members of the North American Islamic Council ("NAIC"). He would also provide testimony that the goal of NAIC is to unify Somali Imans under a moderate peaceful teaching. He would also testify that al-Shabaab websites specifically state that NAIC, and the Counsel of Somali Religious

1 | Schools, are against al Shabaab. (Fontier Decl. ¶¶29-31).

2 |     The court notes the marginal relevance of a Somali Iman providing testimony
3 | about NAIC, a North American organization. The court further notes that there are
4 | several different means of introducing statements encountered on al-Shabaab websites.

5 |     In sum, the court concludes that this testimony is only marginally helpful to
6 | Defendants.

7 | **Hassan Mohamud Guled, a/k/a "Sheikalow"**

8 |     Defendants represent that Mr. Guled was a police commissioner of the
9 | Gelguduud region during the relevant time period and that he is the person identified
10 | on the telephone calls as "Sheikalow." He would also provide testimony that he had
11 | used defendant's house on more than one occasion for administrative purposes. This
12 | testimony would undermine that Government's theory that defendant Moalin
13 | communicated with the leader of al-Shabaab, Aden Ayrow (a/k/a Sheikalow).[4]

14 |     In large part, the Government responds that the proposed testimony that Mr.
15 | Guled is "Sheikalow," meaning Aden Ayrow, is simply not credible in light of the
16 | recorded conversations between "Sheikalow" and Moalin. The recorded conversations
17 | identified by the Government tend to support this argument. Given that the name
18 | "Sheikalow" may be applied to hundreds if not thousands of individuals it is not in that
19 | sense an uncommon nickname.

20 |     The court concludes that the identity of "Sheikalow" is a material issue in the
21 | case and that the commonness of the name may raise challenges for the parties. On this
22 | motion, it is not the role of the court to weigh credibility determinations of potential
23 | witnesses. While the translated conversations themselves indicate that the "Sheikalow"
24 | taking part in the conversation is Aden Ayrow, this evidence may be countered by
25 | Defendants.

26 |     In sum, the court concludes that this testimony is potentially helpful to

27 | _____

28 | [4] According to Defendants, Sheikalow is a nickname that means "of the Sheikal tribe." (Fontier Decl. ¶38).

1 | Defendants.

2 |    Safety of United States Officials and Defense Counsel

3 |    The court must consider whether the safety of United States officials and defense
4 | counsel would be compromised by travel to a foreign location. Omene, 143 F.3d at
5 | 1169-70; United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000). In Olafson the
6 | Ninth Circuit concluded that the district court properly considered and denied Rule 15
7 | depositions in Mexico because, in part, conditions in Mexico were unsafe for American
8 | prosecutors. Id.

9 |    Here, the dangers of travel to Somalia are acute and present substantial risks to
10 | both United States personnel and defense counsel. The State Department has issued a
11 | warning to U.S. citizens to avoid all travel to Somalia. The travel warning, dated June
12 | 15, 2012, identifies the risk of kidnaping, murder, illegal roadblocks, banditry and other
13 | violent incidents. (Jacobson Decl. ¶4). The travel warning identifies numerous recent
14 | acts of violence. While Defendants propose taking the depositions adjacent to the
15 | airport in Mogadishu, the airport has been a particular target of terrorist attacks. The
16 | terrorist attacks at the airport include a mortar attack on Congressman Payne in April
17 | 2009 and an al-Shabaab suicide bombing in September 2010. (Cole Decl. ¶¶19, 20).
18 | Furthermore, Mogadishu has a history of recent extreme violence. (Cole Decl. ¶23).
19 | Finally, the court notes that there is no State Department presence to assist U.S.
20 | personnel in case of an emergency.

21 |    While Defendants argue that the SKA facility adjacent to the airport is secure and
22 | protected by African Union peacekeepers, this argument does not take into
23 | consideration the recent and on-going violent history in Somalia. For this court to
24 | order, encourage, or condone United States prosecutors traveling to a lawless and
25 | proven violent state - with advance notice to those who might contemplate harming
26 | these individuals - would be reckless and indefensible.

27 |    In sum, this factor weighs strongly and, in and of itself, decisively against Rule
28 | 15 depositions going forward in Somalia.

05cr2250

1    Miscellaneous Factors

2           The court also considers whether the deposition procedures in the foreign
3    country, as to reliability and trustworthiness, are compatible with fundamental issues
4    of fairness.   See Societe Nationale Industrielle Aerospoatiale, 482 U.S. 522.
5    Defendants contend that an oath will be administered by a Somali magistrate and
6    subject to cross-examination by Government counsel.  There is no evidence before the
7    court that the methods proposed by Defendants are either reliable or trustworthy.  There
8    is no showing that an oath in Somali has the same meaning as an oath in this country
9    (or one subject to the Hague convention).  There is no showing that an oath in Somalia
10   is subject to penalties of perjury and judicial process like those available in the United
11   States.  In fact, due to civil unrest in Somalia, there does not appear to be any significant
12   functioning executive or judicial process in Somalia.[5]   As noted on the State
13   Department's website, "There is no organized system of criminal justice in Somalia, nor
14   is there any recognized or established authority to administer a uniform application of
15   due process.  Enforcement of criminal law is, therefore, haphazard to nonexistent."
16   (Jacobson Decl. ¶10).  In sum, this factor of reliability and trustworthiness of the
17   proposed depositions strongly disfavors Rule 15 depositions in Somalia.

18          Considering all relevant factors and based upon the present motion, Defendants
19   fail to establish extraordinary circumstances warranting Rule 15 depositions.  The
20   motion for Rule 15 depositions is denied without prejudice subject to a further
21   showing.[6]

22

23          [5] Without a functioning government, the court notes that even simple tasks such as establishing
24   the identity of a witness by means of official government documentation  presents a challenge.

25          [6] While the core and thrust of this motion is for depositions to proceed in Somalia, Defendants
     have intermittently and casually suggested in their papers alternative considerations might be given to
26   depositions through written interrogatories or videoconferencing.  (Reply at pp. 20-21).  At the time
     of oral argument, alternatives were expanded to include taking Rule 15 depositions at other sites in the
27   region.  Accordingly, the court has, once again, ordered the parties to immediately appear before
     Magistrate Judge Gallo for management of further Rule 15 discussions between the parties including
28   any arrangements that may be agreed upon by the parties.  Again, the court indicates its willingness to
     consider, and even adopt, any agreements the parties may reach concerning Rule 15 depositions or other

1

## THE MOTION TO STAY

2      Defendant Mohamud moves to stay the action pending the taking of Rule 15

3   depositions.  As the court has denied the motion for Rule 15 depositions under the

4   pending request, there is no basis to stay the action. As articulated by the court at the

5   August 22, 2012 hearing, a continuance of pending pretrial and trial dates is preferable

6   to an open-ended stay of the action.

7      **IT IS SO ORDERED.**

8   DATED: _Aug 22_ , 2012

9

10                                              **JEFFREY T. MILLER**
                                               United States District Judge

11   cc:      All parties

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   discovery. To that end, this court is willing to entertain a reasonable continuance of all pending dates
     to accommodate Rule 15 depositions that may be agreed upon or for other good cause shown. At the
27   time of the August 22, 2012 status hearing, all Defendants requested a continuance of all pending dates.
     The Government did not oppose the request.  To these ends, the parties have been requested to meet
28   and confer on Rule 15 issues and the scheduling of new dates for status hearings, motions in limine
     briefing and argument, and trial.