1                    United States District Court

2                   Southern District of California

3

4   UNITED STATES OF AMERICA,      )
                                   )
5                     Plaintiff,   )
                                   )
6       vs.                        ) Case No. 10-CR-4246 JM
                                   ) Status Hearing
7   BASAALY SAEED MOALIN,          ) Wednesday, August 22, 2012
    MOHAMED MOHAMED MOHAMUD,       )
8   ISSA DOREH,                    )
    AHMED NASIR TAALIL MOHAMUD,    )
9                                  )
                      Defendants.  )
10  _____)

11

12              Before the Honorable Jeffrey T. Miller
                    United States District Judge

13

14

15

16

17

18

19

20  Official Interpreter:    Ayderus Ali, CCI

21  Official Court Reporter: Debra M. Henson, CSR, RPR
                             U.S. Courthouse
22                           940 Front Street, Suite 5190
                             San Diego, CA  92101
23                           (619) 238-4538

24

25              Record produced by stenographic reporter

```
1    Appearances

2    For the Government:        Laura E. Duffy
                                UNITED STATES ATTORNEY
3                               William P. Cole
                                Caroline P. Han
4                               ASSISTANT U.S. ATTORNEYS
                                880 Front Street, Suite 6293
5                               San Diego, CA  92101

6    For the Defendants:
     (Mr. Moalin)              Joshua L. Dratel, Esq.
7                               Alice L. Fontier, Esq.
                                OFFICE OF JOSHUA L. DRATEL
8                               2 Wall Street, Third Floor
                                New York, NY  10005
9
     (Mr. M. Mohamud)          Linda Moreno, Esq.
10                              LINDA MORENO, P.A.
                                P.O. Box 10985
11                              Tampa, FL  33679

12   (Mr. Doreh)               Ahmed Ghappour, Esq.
                                LAW OFFICES OF AHMED GHAPPOUR
13                              P.O. Box 20367
                                Seattle, WA  98102
14
     (Mr. A. Mohamud)          Thomas A. Durkin, Esq.
15                              DURKIN & ROBERTS
                                2446 N. Clark Street
16                              Chicago, IL  60614

17

18

19

20

21

22

23

24

25
```

```
 1        San Diego, California - Wednesday, August 22, 2012
 2        (Defendant Mr. A. Mohamud is being assisted by Somali
 3   interpreter Ayderus Ali.)
 4            THE CLERK:  Calling matter 1 on calendar,
 5   10-CR-4246, USA versus Basaaly Saeed Moalin, Mohamed Mohamed
 6   Mohamud, Issa Doreh, Ahmed Nasir Taalil Mohamud, for motion
 7   hearing.
 8            THE COURT:  Counsel, why don't we wait until the
 9   defendants are present, and everyone can state their
10   appearances.  Thank you.
11            MS. MORENO:  Good morning, your Honor.  If I may
12   address the Court.  We haven't had the ability -- if we may
13   just briefly discuss the new arraignment with our clients.  I
14   didn't have the chance to go back and explain to Mr. Mohamud
15   that he's going to be arraigned on the superseding
16   indictment.
17            THE COURT:  Okay.
18            MS. MORENO:  I didn't know it was going to happen
19   this morning.  If I can have a moment, please, your Honor.
20            THE COURT:  Sure.
21            MS. MORENO:  Thank you.
22        (Brief pause in the proceedings.)
23            THE COURT:  All right.  I think counsel have had an
24   opportunity to briefly confer with their clients.  Would
25   counsel please state their appearances.
```

 1          MR. COLE:  Yes.  William Cole and Caroline Han for

 2   the United States, your Honor.

 3          MR. DRATEL:  Good morning, your Honor.  Joshua

 4   Dratel and Alice Fontier for Mr. Moalin.

 5          MS. MORENO:  Good morning, your Honor.  Linda

 6   Moreno on behalf of Mr. Mohamud, who's present in custody.

 7          MR. GHAPPOUR:  Good morning, your Honor.  Ahmed

 8   Ghappour on behalf of Issa Doreh.

 9          MR. DURKIN:  Good morning, Judge.  Tom Durkin on

10   behalf of Nasir -- Ahmed Nasir Taalil Mohamud, who's also

11   present in custody.

12          THE COURT:  All right.  Thank you.  And he's

13   present in custody and utilizing the services of a Somali

14   interpreter the record should reflect.

15          All right.  This is the time set for our latest

16   status conference, and it's also the time that defense

17   counsel have requested a hearing on the Rule 15 motion, and

18   perhaps we can address that at this point.  There may be

19   other matters we need to address, but we can address the Rule

20   15, at least give counsel an opportunity to argue or

21   highlight any concerns or points they want to make.

22          I should tell counsel, counsel should know, that

23   I've thoroughly reviewed the papers, all the papers, with

24   respect to the Rule 15 motion, so there's no need to merely

25   repeat what you have in your papers, but as I say, if there's

 1   something you'd like to highlight or an additional point to

 2   be made, you may certainly proceed.

 3           MR. DURKIN:  Judge, one other matter.  We had filed

 4   a motion, a renewed motion --

 5           THE COURT:  If I can ask counsel to use the

 6   lectern, I think it will be -- yes, let's proceed with the

 7   arraignment on the second superseding indictment.  Let's do

 8   that initially, and then we'll proceed to the Rule 15 and

 9   hear other matters.  I would ask counsel to either pull

10   microphones very close to them if they wish to remain seated

11   or use the lectern microphone there.

12           MR. DURKIN:  Judge, there was one other issue.  We

13   had filed a motion, a renewed motion for stay or, in the

14   alternative, continue the trial date, and we have filed an

15   unopposed application to shorten the notice requirement.

16           THE COURT:  Well, let's take up that matter as one

17   of several that we'll take up.

18           MR. DURKIN:  I just thought it might make more

19   sense at the tail end of the Rule 15 for us to take that up

20   as well.

21           THE COURT:  Well, I'll address it.  You'll have an

22   opportunity, Mr. Dratel -- excuse me, Mr. Durkin -- to be

23   heard on that.

24           MR. DURKIN:  Thank you.

25           THE COURT:  Okay.  Why don't we proceed with the

1    arraignment.

2              THE CLERK:  Basaaly Saeed Moalin, is that your true

3    name?

4              DEFENDANT MR. MOALIN:  Yes.

5              THE CLERK:  You are informed that a second

6    superseding indictment has now been filed charging you with

7    conspiracy to provide material support to terrorists,

8    conspiracy to provide material support to foreign terrorist

9    organization, conspiracy to launder monetary instruments,

10   providing material support to terrorists, and providing

11   material support to foreign terrorist organization.  Have you

12   received a copy of the second superseding indictment?

13             MR. DRATEL:  Yes, your Honor, we've received it,

14   I've reviewed it -- we've reviewed it -- Ms. Fontier and I

15   reviewed with Mr. Moalin.

16             THE CLERK:  Do you waive further reading?

17             MR. DRATEL:  Yes, waive further reading.

18             THE CLERK:  Mr. Mohamed Mohamed Mohamud?

19             DEFENDANT MR. M. MOHAMUD:  Yes.

20             THE CLERK:  Is that your true name?

21             DEFENDANT MR. M. MOHAMUD:  Yes, that my name.

22             THE CLERK:  Issa Doreh?

23             DEFENDANT MR. DOREH:  Yeah, I'm here.

24             THE CLERK:  Is that your true name?

25             DEFENDANT MR. DOREH:  Yes, ma'am.

1              THE CLERK:  You're each informed that a second

2    superseding indictment has now been filed charging you with

3    conspiracy to provide -- to provide material support to

4    terrorists, conspiracy to provide material support to foreign

5    terrorist organization, conspiracy to launder monetary

6    instruments, and providing material support to foreign

7    terrorist organizations.  Have you received a copy of the

8    second superseding indictment?

9              MS. MORENO:  Yes.

10             THE CLERK:  Do you waive further?

11             MS. MORENO:  So waived.

12             THE CLERK:  And as to Mr. Issa Doreh?

13             MR. GHAPPOUR:  Yes, and so waived.

14             THE CLERK:  Thank you.  Mr. Ahmed Nasir Taalil

15   Mohamud, is that your true name?

16             DEFENDANT MR. A. MOHAMUD:  Yes.

17             THE CLERK:  You're informed that a second

18   superseding indictment has now been filed charging you with

19   conspiracy to provide material support to terrorists,

20   conspiracy to provide material support to foreign terrorist

21   organization, and conspiracy to launder monetary instruments.

22   Have you received a copy of the second superseding

23   indictment?

24             MR. DURKIN:  Judge, we'll acknowledge receipt of a

25   copy of the indictment.  We've reviewed it, and we would

1    waive formal reading thereof and enter pleas of not guilty.

2              THE COURT:  Thank you.

3              THE CLERK:  Thank you.  You are each further

4    advised that you're entitled to a trial by jury, to be

5    represented by counsel at all stages of the proceedings

6    before this Court, and to have witnesses summoned to testify

7    on your behalf.

8              How do you now plead to the second superseding

9    indictment, guilty or not guilty?  Mr. Basaaly Saeed Moalin,

10   as to Count 1, 2, 3, 4, and 5?

11             MR. DRATEL:  Not guilty.

12             THE COURT:  All right.  A not-guilty plea will be

13   entered with respect to all counts by defendant Moalin.

14             THE CLERK:  Mr. Mohamed Mohamed Mohamud, as to

15   Counts 1, 2, 3, and 5, guilty or not guilty?

16             MS. MORENO:  Not guilty.

17             THE COURT:  A not-guilty plea will be entered with

18   respect to those counts charging the second defendant,

19   Mohamed Mohamed Mohamud.

20             THE CLERK:  Issa Doreh, as to Counts 1, 2, 3, and

21   5, guilty or not guilty?

22             MR. GHAPPOUR:  Not guilty.

23             THE COURT:  A not-guilty plea will be entered with

24   respect to each of the counts charging defendant Issa Doreh.

25             THE CLERK:  Ahmed Nasir Taalil Mohamud, as to

 1   Counts 1, 2, and 3?

 2           MR. DURKIN:  Not guilty.

 3           THE COURT:  And a not-guilty count will be entered

 4   on behalf of Mr. Ahmed Mohamud with respect to each of the

 5   counts brought against that defendant, defendant number 4,

 6   Mr. Mohamud.

 7           Okay.  Moving to the -- to the Rule 15 matter.

 8   Counsel, are there any further arguments you wish to make or

 9   underscore in connection with that pending motion?

10           MS. FONTIER:  Yes, your Honor.  Your Honor, when I

11   was packing up the hard copies of these motions to come here,

12   I was honestly shocked by the amount of paper we managed to

13   put together on these motions, so I do appreciate your having

14   read through everything; and I certainly won't burden the

15   record with a full argument on each of these issues, but I do

16   think that there are several things that are worth

17   highlighting and also noting for the Court.

18           And I want to first start out by saying that since

19   filing these and since receiving the government's response

20   and reaction, we have been doing ongoing investigation into

21   alternatives and other locations as well as alternate means

22   by which these may be done.  And Ms. Moreno is going to

23   address any questions that you have about alternatives to a

24   location if your Honor feels that the S.K.A. facility is out

25   of the question.

1            THE COURT:  Well, Ms. Fontier, let me state

2    something here at the threshold of your arguments.  I don't

3    see the position of the Court negotiating with the parties at

4    this point as to what is going to be acceptable and what is

5    not going to be acceptable.  All I have before me is the

6    pending motion.

7            MS. FONTIER:  Yes, your Honor.

8            THE COURT:  And I know that there have been some

9    casual and intermittent suggestions in your papers as to what

10   might fly if the thrust and the core of your motion as it

11   relates to taking these depositions in Somalia adjacent to

12   the airport are unsuccessful.  I can only -- I can only react

13   to what's before me, and -- and also it's important to

14   consider the right of the government to file an opposition to

15   a formed and detailed alternative, if that's what you're

16   utilizing or thinking about at this particular point in time.

17   So to take this as an opportunity to state fallback positions

18   without giving the Court an opportunity to look at what's

19   being proposed, without giving the government an opportunity

20   to oppose or not oppose I think is a nonstarter at this time.

21           MS. FONTIER:  Yes, your Honor.  And it is -- let me

22   be clear that it is our position, as stated in the papers,

23   that for each of these witnesses, first, that they are likely

24   to be unavailable; that their information is material and

25   exculpatory; that these Rule 15 depositions should be

1   granted; and that there is a location at which we interviewed

2   them to begin with, the S.K.A. facility by the airport in

3   Somalia, that is an appropriate place that we have already

4   secured and that we have talked to members of the T.F.G. and

5   are able to get a magistrate, we're able to get an

6   interpreter into that facility.  We're ready to go as far as

7   we're concerned as to the S.K.A. facility, and that is

8   certainly our first choice, and that is what we would like to

9   have happen.

10          So before putting the cart before the horse though,

11   let me go back to the actual motions.  And, your Honor, I

12   think the government raised multiple concerns which I don't

13   think have actual merit on these issues.  The question before

14   the Court is really whether this is the type of case where

15   there are exceptional circumstances and it would be unjust to

16   not grant those depositions.

17          Of course, there are certain factors that the Court

18   has to look into.  I'm not going to run through each of those

19   again, but the issues that the government has raised, the

20   timeliness issue I think is set forth very clearly in our

21   reply that -- that is not really lack -- their timeliness

22   argument lacks in merit.  We're not on the eve of trial, as

23   has happened in some of the other cases, or a week before

24   trial; we are still two months, three months before trial.

25          THE COURT:  But in the papers you filed, you

1    indicated that if these depositions are granted, it would

2    necessitate a delay of the trial.  So it really doesn't make

3    any difference whether they're actually brought at the 11th

4    hour and 59th minute, which they're not, but they have been

5    brought three and a half months after the initial indication

6    from defense counsel that foreign depositions were being

7    considered.

8          MS. FONTIER:  Your Honor, we have been obviously

9    on -- working on this case and going through the very

10   voluminous discovery dealing with the, you know, 1800 Somali

11   phone calls and trying to establish --

12         THE COURT:  That's a separate issue --

13         MS. FONTIER:  Right.

14         THE COURT:  -- that's a separate issue.  But your

15   argument began to assume I think, looking at the subtext of

16   it, that you're not bringing this motion too late, that it's

17   brought in sufficient time prior to trial.  But that runs

18   against what has been set forth in the papers, that if for

19   some reason the Court were to grant these depositions

20   ultimately in an order, that the trial would have to be

21   continued once again.  So I think that's the position that

22   I'm looking at, or the practical effect of keeping the

23   current trial date secure.  Doesn't seem that that would

24   happen if the depositions go forward.

25         MS. FONTIER:  It would certainly be -- it would

1    certainly be difficult, your Honor.  It would certainly be

2    difficult to --

3              THE COURT:  Well, there's been a -- there's been

4    request for a stay on the part of one of the defendants if in

5    fact the motion is granted; there's been a request for a stay

6    of all proceedings while further investigation takes place

7    and the depositions be arranged.  Now, I know that there's

8    perhaps another basis for the request for a stay, but it

9    doesn't -- in any event, I think the point was made that were

10   there depositions to go forward, there would be very little

11   chance of keeping the trial date.

12             MS. FONTIER:  And I will allow Mr. Durkin to

13   address his motion to stay with your Honor.  In reality,

14   there would be -- it would be very difficult.  Is it

15   completely and totally out of the question for us to go to

16   Somalia in September and take these depositions?  Perhaps

17   not.  It would be extremely difficult.  And I think that it

18   would probably be more difficult for the government to make

19   their own arrangements in that amount of time.  We know where

20   we're going and we've been there.  We know how to -- what --

21   we can make the arrangements.

22             But that is I think also a secondary issue to the

23   fact of -- what is the true concern in all of the cases is

24   whether these witnesses are likely to be unavailable -- not

25   conclusively unavailable but likely to be unavailable -- and

1  whether or not their testimony is material to a fact at

2  issue.  And these witnesses, all eight of them, are Somali

3  nationals who are in Somalia who do not have current visas or

4  the ability to travel to the United States.  And, in

5  addition, since the time that we filed these, we've been back

6  in contact with them, and each of these eight witnesses has

7  stated, for various reasons, that they are unable or

8  unwilling, and unwilling, to come to the United States.  And

9  under the current case law, that is sufficient for a showing

10 of unavailability to admit their depositions, not merely just

11 to take them.  They've already -- we can already establish

12 the higher standard for admitting a deposition, and that's

13 not even what's at issue here.

14         Really, what we're concerned about is whether or

15 not their testimony should be preserved in the event that

16 they are in fact unavailable at the time of trial.  And that

17 I think is very obviously met in these circumstances where

18 these -- Somalia is just not a place where visas are

19 regularly granted, where someone can just, you know, hop on a

20 plane.  It's not like coming from Canada or France.  You

21 know, these are not visa waiver or passport waiver countries.

22 In fact, it I think -- I believe it's in our papers -- is the

23 country with the second highest rate of visa refusals.  In

24 addition, the passports that people do have are not

25 recognized by the United States government.  They have to get

1   a passport waiver in addition to trying to get a visa.  I

2   mean the hurdles are immense, and there are things that are

3   not likely to ever be able to be done.

4         So in a nutshell, the fact that these are Somali

5   nationals in Somalia makes them likely to be unavailable and

6   meets that prong of the Court's decision on whether or not

7   these depositions should be granted.

8         The second is to the materiality.  And it just

9   defies logic and reason to say that these witnesses are not

10  material.  Just starting -- well, let's take two of them for

11  the -- to start with, who are I think are beyond question

12  that their testimony is material.  The first is Hassan Guled,

13  whose nickname is Sheikalo (phonetic).  For the first four

14  transfers in the new superseding indictment in which these

15  defendants have just been arraigned went to Sheikalo, the

16  person who Mr. Moalin is talking to on the phone, who is

17  Sheikalo.  He received those first four transfers in the

18  superseding indictment.  We believe that we know who that

19  person is, have spoken to him, and he will be able to testify

20  about whether or not that is in fact him, if he received the

21  money, what he did with it.  There is no question that that

22  is material evidence.  And the government's argument to the

23  contrary that this is patently incredible is, first of all,

24  not actually the issue; whether or not these are credible

25  witnesses is a question of fact for the jury.  And second of

1   all, their evidence that they base that on we take serious

2   issue with.  I do not believe, based on information received

3   from our certified translator, that their rendition of the

4   evidence, their phone call, is in fact accurate.  Their

5   transcripts do not accurately state what was said in Somali

6   between Mr. Moalin and the person on the other end of the

7   phone.  And we are still in the process of getting many more

8   of these calls translated, but there are fundamental,

9   material differences.  And so just to say -- to accept their

10  transcripts as fact, as evidence --

11              THE COURT:  I don't think you have --

12              MS. FONTIER:  -- and say that this is not a

13  credible --

14              THE COURT:  I don't think you have that --

15              MS. FONTIER:  -- witness is not appropriate.

16              THE COURT:  -- in your motion papers, did you,

17  counsel?

18              MS. FONTIER:  I'm sorry, your Honor?

19              THE COURT:  I don't think I saw in your motion

20  papers that you were taking issue with the accuracy of

21  translations.

22              MS. FONTIER:  We received the transcribe and

23  translate of that specific phone call, the January 20, 2008

24  phone call, on Monday.  What we said in our reply is that

25  this is a question of fact for the jury and the prosecution

 1   cannot just decide that this is an incredible witness and

 2   then say that that makes them nonmaterial.

 3            So the basis for what I'm saying, the argument, the

 4   law is in our reply, but the facts on which we base that,

 5   this actual transcript was received on Monday.  So, no, that

 6   transcript that I'm referring to is not in our motion papers.

 7   But there -- it goes -- the credibility of them anyway is

 8   actually a side issue, which, again, is what we have a jury

 9   trial for is to decide whether these are credible or not,

10   whether the government's evidence is credible or not.  It

11   doesn't matter ultimately what the government thinks about

12   how credible these witnesses may or may not be to whether or

13   not they are material.

14            Myself and Mr. Ghappour went to Somalia.  We were

15   at the S.K.A. facility for five days interviewing these

16   witnesses.  We met with each of them individually.  We had

17   extensive conversations with them.  We are -- it is as an

18   Officer of the Court that I filed a declaration with my name

19   on it with my belief about what these individuals would say,

20   and that is based on my personal knowledge from interviewing

21   them and meeting with them.  And the information that is in

22   the declaration, which we had originally filed ex parte

23   because it's so -- it is our defense, but we decided to

24   provide to the entire Court and to the government to avoid

25   any sort of issue with that, is evidence that absolutely

1   forms the basis of a defense.  It is exculpatory -- it's

2   completely exculpatory.  But even that, it is -- to not have

3   the information that these witnesses will provide is to deny

4   us the right to present a defense.

5           This government is prosecuting a global case.

6   They're prosecuting these men for what happened in Somalia.

7   As their defense attorneys, we must have the ability to --

8   not only to investigate and learn things for our own benefit,

9   but then to present that evidence to the Court.  We must have

10  that ability.  And this is exculpatory evidence.

11          The second witness that I just want to highlight

12  is -- he's -- in all the papers he is named as Farah Yare,

13  Y-a-r-e.  His name is actually Farah Shidane.  He is

14  unindicted co-conspirator number 1.  The government's

15  allegations -- I don't remember the exact number, but a

16  number of the transfers that are in the superseding

17  indictment went directly to Farah Yare, to Mr. Shidane.  He

18  is able to testify about who he is, what he was doing, what

19  his role was in the local administration in Somalia, what he

20  specifically did with the money that was received; he can

21  testify to that.  If that is not material testimony, then

22  material testimony doesn't exist.  It is the absolute

23  definition of materiality.

24          And in order -- again, what the government sort of

25  seems to be hoping is that we don't get to present a defense,

1   that we just have to deal with their evidence, accept what

2   they say these transcripts say and deal with it.  But that's

3   not exactly how the adversarial process works.  Quite certain

4   that the Sixth Amendment provides us the right to present a

5   defense, the right to put on evidence, the right to call

6   witnesses.  And the only means by which we have to call these

7   witnesses is the Rule 15 depositions.  If we could go pick

8   these witnesses up and bring them to court, that would be

9   preferable to us.  We cannot do that, so the only alternative

10   in these exceptional circumstances to promote anything close

11   to a fair and just trial for these men is to grant these Rule

12   15s.  These witnesses are unavailable, their testimony is

13   absolutely material.

14          Now, I'm not going to go through the remaining six

15   witnesses but, your Honor, they are also, for the various

16   reasons that are stated, material and unavailable, willing to

17   be deposed in Somalia or in an alternate location -- but,

18   again, I won't go into that at the moment.  They are willing

19   to do that.  They cannot come here.

20          And, your Honor, it also is -- you know, if we're

21   ultimately going to go to Somalia and do Rule 15 depositions

22   of one person, you know, it doesn't seem logical to me to say

23   well, you should only do one or you should only do two.  All

24   the witnesses are there.  We can do these depositions.

25          And, again, another point that -- I think the

1   government keeps confusing in their papers this standard for

2   taking a deposition with the standard for admitting a

3   deposition.  If ultimately the government circumscribes their

4   proof so much that they only admit evidence of the eight

5   transfers that are in the -- in the indictment and they admit

6   nothing else on background or anything else, then only the

7   two witnesses that relate to that will be relevant, and then

8   only that testimony would be admissible.  But that doesn't

9   make -- the chances of that happening I think are slim to

10  none.  And even if that were the case, it doesn't bear on

11  whether or not we should preserve the other witnesses'

12  testimony in the event that it is relevant and admissible at

13  the time of trial.  Those are questions that can be asked at

14  a later point.

15          So their arguments about the credibility, about the

16  admissibility, about the weight of the evidence, all of those

17  things are either for a later point or for the jury, but they

18  don't go to the question of whether these should be taken.

19  And I think ultimately, your Honor, I submit to you that

20  there is no possible way for a defense to be presented for

21  these men in a fair and just way without these depositions,

22  and I think that your Honor should grant them for that

23  purpose.  And, your Honor, I'm happy to answer any questions

24  that you may have about any of this or I can happily sit

25  down.

 1              THE COURT:  Okay.  Thank you.  I'll give the

 2    government an opportunity to respond.

 3              MR. DRATEL:  Your Honor, may I say a couple of

 4    things that --

 5              THE COURT:  Please don't repeat what's --

 6              MR. DRATEL:  I'm not going to repeat.

 7              THE COURT:  -- already been --

 8              MR. DRATEL:  I'm not going to repeat at all.

 9              THE COURT:  Okay.

10              MR. DRATEL:  Just two things.  One is with respect

11    to the issue of timeliness, we had anticipated actually doing

12    these depositions during this two-week period.  We'd all

13    allotted the last two weeks of August to perhaps doing it,

14    and perhaps we didn't anticipate how long the whole process

15    of resolving the motion, but we -- there was nothing dilatory

16    about how we proceeded, and we alerted everyone that we were

17    planning on doing this, including telling the government that

18    the last two weeks of August were -- were available and that

19    we would try to do it during that period.

20              The point about the delay in the trial is that

21    this -- no one wants to delay the trial.  The defendants are

22    the ones who are prejudiced by a delay of the trial.  I don't

23    think the government has any prejudice if the trial is

24    delayed.  But this evidence is so important, it is so

25    essential to a fair trial, to a fair adjudication of this

1    case that we would be willing to countenance a delay if it

2    means getting these depositions.  That's our position.  We're

3    not -- we're not looking to delay the trial.  And potentially

4    it maybe can be done in the -- before the October 15 date in

5    another context.  And I'm -- and I'm not just going here by

6    experience with Rule 15s in other -- in other situations is

7    that we're not asking the Court to negotiate in the context

8    of an alternative, but there are alternatives in the context

9    of relief.

10         The key relief is getting the depositions.  The

11   logistics of it is less important.  It's not really a

12   question of relief because if we're talking about going to

13   Djibouti, which we determined the witnesses can go, if we're

14   talking about going to Kenya, Nairobi, where the witnesses,

15   it turns out, can go, that eliminates the safety issue

16   100 percent.  Djibouti has an enormous U.S. presence --

17         THE COURT:  Once again, Mr. Dratel, those issues

18   aren't before me.  And when you were last here in early

19   April, I asked everyone to see Judge Gallo so that discovery

20   could be managed.  I indicated to you at the time that he

21   would be out for about a week but that the Court would

22   appreciate all counsel going to Magistrate Judge Gallo so

23   that discovery could be arranged.  You went down to chambers,

24   he wasn't in, but there was never any follow-up.  The parties

25   did not allow the issue of Rule 15 depositions or some

1    substitute therefor to be discussed.  By "substitute

2    therefor" I mean some other alternative to what the core and

3    thrust of this particular motion is.

4            It is accurate for you to say that during our last

5    status conference, you indicated that you'd be looking into a

6    filing a Rule 15 motion.  Of course, the Rule 15 motion could

7    have been filed much earlier than the date it was filed,

8    July 20, but there were three and a half months that went by

9    without that Rule 15 motion being filed, and there was no

10   follow-up with Judge Gallo, and that is truly unfortunate;

11   that is not what this Court had in mind when it suggested

12   that the parties allow Magistrate Judge Gallo to manage

13   discovery here.  So obviously at the time the new trial date

14   was set for late October, it was set with the Court

15   indicating to all concerned this was a firm trial date.  And

16   there  was certainly good reason to continue the trial date,

17   the earlier time.  I mean I know you've been negotiating your

18   way through an awful lot of discovery, and there are

19   practical considerations that I think you've ably dealt with.

20   But, quite frankly, when you're talking about the timeliness

21   of this Rule 15 motion, to the extent timeliness is relevant

22   in this analysis, I have real concern as to whether or not

23   this Rule 15 motion was brought in a timely fashion.

24           MR. DRATEL:  Well, your Honor, if I may address

25   that.  One is that -- just one logistical issue, which is

1   that you can't file on ECF with the magistrate, so we had to

2   file the motion with the Court --

3          THE COURT:  Obviously.

4          MR. DRATEL:  -- which we did.  But the issue of --

5   we were not in a position to identify the witnesses, identify

6   what they would testify about until the trip to Somalia, and

7   also whether they could be done in Somalia at all until the

8   trip was made and then there was a return.

9          THE COURT:  Why do you say there was difficulty in

10  identifying the witnesses when it was your clients who knew,

11  allegedly, who they were talking to and for what purposes?  I

12  mean your clients have told you, presumably, who they were

13  talking to and where these people could be located.

14         MR. DRATEL:  But it's more than that, your Honor.

15  We have additional witnesses -- we knew Farah Yare, yes, but

16  we didn't know whether we were able to locate these people,

17  sit down and talk to them, and determine -- it wouldn't have

18  been a ripe motion if we had made the motion earlier because,

19  number 1, we wouldn't have had all the witnesses to know what

20  they would say, and some people -- the identities I don't

21  want to go into, but some of the people we found through

22  investigation, not through necessarily that -- they're not

23  all on the telephone calls; there are only a couple that are

24  on the telephone calls.  Some of these other witnesses were

25  found through investigation, and that investigation was not

 1    entirely within our control in the sense that we're relying

 2    on other people who were working for us in Somalia to -- and

 3    who aren't always in Somalia who have to travel there to do

 4    it, and we had to arrange with their schedule.

 5            We did this as rapidly as we could given the

 6    considerable difficulties in managing a case like this

 7    without the kinds of resources that one has with an

 8    institutional foundation, so to speak.  But, you know, if

 9    we're talking about -- but, you know, so that's the part

10    about that.  We did this in as prompt a manner as we possibly

11    could given the difficulties in doing it.  And we are under a

12    considerable handicap not being a government, not being an

13    institution, and having to operate in this -- in this

14    situation.  And we located these people, identified them.  If

15    we filed a motion before the -- before the trip, it wouldn't

16    be able to -- we wouldn't be able to give the Court, whether

17    it's Magistrate Gallo or your Honor, a fair picture of what

18    these people would be saying and whether or not they would be

19    witnesses.

20            The other thing is -- and I want to get back again

21    to alternatives just because I think that when I talked about

22    Djibouti and Kenya, the government can't have it -- that

23    takes the safety issue out of it.  It's really not an issue.

24    It's really just an alternative.  I've been in cases where --

25    where it's always a process of -- and the Court can be

1   involved or not involved as much as it wishes in the sense of

2   fashioning a type of relief that gives the defendant the

3   benefit of this absolutely essential evidence so we don't

4   have a trial that's unilateral in evidence and only the

5   government has an opportunity to develop witnesses, only the

6   government has an opportunity to develop evidence, that --

7   one that gives both sides an opportunity to put before the

8   jury a fair version of what occurred and let the jury decide.

9   And that's what we're asking for.

10          And my point about the trial is I agree that it's a

11   firm trial date, and I'm not sure that we can't do it if we

12   go to Djibouti because that's rather easy, and Kenya; those

13   are rather easy to arrange.  You know, Somalia's a little

14   more difficult; the lead-up for that first visit took a

15   significant amount of time because of that, and determining

16   whether there was safe -- but, you know, we weren't going to

17   send the lawyers there if it's not a safe situation.  We had

18   to make those determinations.  But now that it's been done,

19   it's a lot easier to arrange having done it once and having

20   confidence in that and seeing what the situation is like

21   there on the ground.

22          But to have the trial date be the impediment when

23   we have this evidence -- and we're doing the best we can for

24   as long as we can to get this evidence before the Court,

25   before a jury, I would just ask the Court to consider that as

1    well.

2              THE COURT:  Thank you.

3              MR. DRATEL:  Thank you, your Honor.

4              MR. DURKIN:  Judge, could I be heard?

5              MS. MORENO:  Thank you.  May I --

6              THE COURT:  Well, you've all joined -- you've all

7    joined in this.  Yes, you can be heard, but I'm going to ask

8    counsel --

9              MS. MORENO:  Nothing's been --

10             THE COURT:  -- not to be cumulative in their

11   arguments.

12             MS. MORENO:  I won't be, your Honor.

13             THE COURT:  All right.

14             MS. MORENO:  Very briefly, with respect to the

15   alternatives that are in our brief, that are in the papers

16   before the Court, I wanted to highlight that -- again,

17   addressing the security/safety issue -- we have proposed I

18   think two or three alternatives for the government to

19   participate in a Rule 15 discovery process.

20             THE COURT:  Okay.  This is the -- this is the

21   difficulty I'm having.  You didn't make a motion for specific

22   alternatives.  As I indicated, this motion is made to proceed

23   with Rule 15 depositions in Somalia at a particular location.

24   That is what is before me.  There were a couple of casual

25   references to perhaps other things that might be done, but

1    that's not under consideration at this particular point in

2    time.

3              And to get back to a point that Mr. Dratel was

4    making where he was in a sense imploring the Court to become

5    involved in the arrangements, if there are other things that

6    can be done, this is precisely the reason I asked counsel to

7    allow Magistrate Judge Gallo to become involved, so that if

8    there were to be a chance to proceed, that other avenues

9    might be explored.  So is that being foreclosed at this

10   particular point in time?  No.  But I'm -- it's very

11   difficult, if not impossible, for this Court to react to

12   gauzy alternatives that are being presented at this point in

13   time, and I hope counsel appreciate that.

14             MS. MORENO:  I'm mindful of the Court's comments.

15   We did include those alternatives in the reply.  What I think

16   I'm hearing the Court say is that certainly a fuller briefing

17   on these alternatives with the ability of the government to

18   respond either formally or through discussions with the

19   government, we're happy to do it.  What we're trying to tell

20   the Court -- and we'll do it with all deliberate speed --

21   what we're fighting for here are these Rule 15 depositions,

22   your Honor, because we believe that they are absolutely

23   critical -- not material, critical -- to the defense in this

24   case.  So I won't belabor and repeat what esteemed co-counsel

25   has said, but we are happy to engage the government in the

 1    discussion of the alternatives and the process with which to

 2    do the Rule 15 depositions.

 3              THE COURT:  Thank you, Ms. Moreno.

 4              MR. DURKIN:  Judge, I just want to make sure that

 5    my position is clear from the beginning.  I am the one that

 6    asked for the stay.  Now, I'm not going to argue the motion

 7    for a stay now, but I am -- I do want to address what I

 8    consider to be constitutional issues that are at stake here

 9    and what I perceive to be, with all due respect, form over

10    substance with respect to the way this should have been

11    litigated.  I don't disagree that we screwed up when we filed

12    the first motion, but we filed this on July 10, which was in

13    advance of -- three months in advance --

14              THE COURT:  Actually July 20.

15              MR. DURKIN:  We originally filed it on July 10.  It

16    was stricken by your Honor on a technicality, but --

17              THE COURT:  Well, you didn't secure a date.

18              MR. DURKIN:  I understand that.  But I'm simply

19    saying what I see happening here is I see my client's due

20    process, effective assistance of counsel, and right to bring

21    witnesses in his defense at stake with respect to form over

22    substance.

23              We're telling you -- I told you in my motion for a

24    stay way back in December that there were people we needed in

25    Somalia.  I didn't think we could find them, but I said we

 1   needed them.  That's why I asked for the stay.  You said that

 2   my request then was gauzy, as you've just said here.  I

 3   understand it was gauzy; it was gauzy then --

 4          THE COURT:  But it was made with respect to a

 5   trial -- a much earlier trial date, and at the time I

 6   indicated, you know, it may be moot because if the trial date

 7   is moved, that gives you quite a period of additional time.

 8          MR. DURKIN:  I understand, and I don't -- I don't

 9   quarrel with that.  I'm simply saying -- I'm talking about

10   vis-a-vis my client's due process rights here, you know, and

11   his right to a fair trial.  I started yelling about this in

12   December in my formal pleadings that that's what we needed to

13   do, and I think everybody is now kind of like, you know,

14   what, there's gambling in the casino with Claude Rains in

15   Casablanca.  I mean this is -- this is the ballgame as far as

16   we're concerned.  I said that back in December, I said it

17   again in February, I said it -- we said it in April.

18          Now, I agree with you that we screwed up one time,

19   which is we filed a motion improperly, but everything else --

20   the idea that somehow the government's right to be able to

21   respond to pleadings, with all due respect, I think is

22   totally wrong vis-a-vis what's at stake here.  Our clients

23   are the ones with rights in this courtroom, not the

24   government.  The government has some procedural right I

25   suppose to respond --

1           THE COURT:  Both sides have a right to a fair

2    trial.

3           MR. DURKIN:  But we have constitutional rights to a

4    fair trial.  We're the only ones with real rights in this

5    courtroom.  And what's at stake here is our right to have a

6    fair trial.  And we're now getting caught up in we can't

7    discuss alternatives today.  Well, there are alternatives.

8    And the only reason we're discussing alternatives is because

9    the government is the one that insisted that we couldn't do

10   it in Somalia.  We disagreed with that, but they're the ones

11   that said they didn't feel secure there.

12          So we do have proposals for Djibouti and Kenya, we

13   do have alternative proposals, and we have to discuss them

14   today unless you want to grant a continuance, and I want a

15   continuance; I don't know about anybody else, but I want a

16   continuance, just like I wanted a stay.  This is critical.

17   These witnesses are material to this defense.  These

18   witnesses negate the government's case.  This is the most

19   classic Rule 15 evidence I've ever seen, and I've been

20   involved in Rule 15s three other times in my career.  It's

21   usually the government asking for it.  I've never seen the

22   government put through hoops like this with respect to their

23   request for Rule 15 depositions.  The government -- whenever

24   the government, in my experience -- and I don't mean this

25   critically of you -- I'm simply saying in my experience in

1   federal courts in this country, what usually happens is the

2   government comes in and they say we want these depositions,

3   and then when everybody beefs about it that there's

4   constitutional issues or there's all these issues of

5   identification, all the other technical things they raise,

6   they say well, that can all be raised regarding the

7   admissibility, and that's what happens, and the government

8   usually gets the depositions.  All we want is the same thing.

9           And I'm telling you, judge, as an officer of this

10  Court, I can't try this case in October or any other time if

11  I can't have these because that's my theory of the defense.

12  My guy's on the caboose in this case.  My guy is at the very

13  tail end here with only having conversations with Mr. Moalin,

14  and I have Mr. Moalin's counsel saying he's innocent because

15  they don't even have the right person.

16          I have to have that evidence or I have to have a

17  separate trial or have to have something.  And I don't mean

18  to get emotional, but this is -- this is the ballgame as far

19  as I'm concerned.  I believe I have a defense here, a valid

20  defense, and we should be able to call him.  And the only

21  people who could possibly be prejudiced by continuing this

22  case are our clients, and they're willing to sit because it's

23  important enough for them.

24          So that's all I want to argue now.  If we're only

25  going to do a Rule 15 -- if we're just arguing a Rule 15,

1    then I say let's forget about the timeliness issue.  That's

2    your biggest concern -- and I understand that --

3              THE COURT:  It's not my biggest concern.  Don't

4    attempt to paraphrase my thoughts or my concerns.

5              MR. DURKIN:  I didn't mean it --

6              THE COURT:  -- Mr. Durkin.

7              MR. DURKIN:  -- that way.  I thought you said that

8    you had concerns about timeliness, and I --

9              THE COURT:  I do have concerns timeliness because

10   that's one of the elements the Court has to take into

11   account.

12             MR. DURKIN:  But it's only one of the elements.

13             THE COURT:  It's only one of the elements, and I'm

14   well aware of that.  Thank you for bringing the torch of

15   enlightenment to this dark chamber, Mr. Durkin.  I appreciate

16   it.  I'm dealing with several elements that I have to

17   weigh --

18             MR. DURKIN:  I understand that.

19             THE COURT:  -- interplay.  And I'm very much aware

20   of what the due process rights of --

21             MR. DURKIN:  Okay.

22             THE COURT:  -- your -- of all of these gentlemen

23   are.

24             MR. DURKIN:  Okay.  Well, and I wanted -- I wanted

25   to put it on the record because I don't think we should get

1    beat by form over substance.  Thank you.

2              THE COURT:  Mr. Cole?

3              MR. COLE:  Thank you, your Honor.  I think our

4    papers cover it.  The only thing I'm going to mention is that

5    we also were responding only to the relief requested in the

6    motion.  We saw the request to go to Mogadishu as a

7    nonstarter.  It seems quite obvious a nonstarter,

8    particularly when coupled with untimeliness.  If there's some

9    other proposal, that's not what's been moved upon, it's not

10   what's before us.  We're happy to consult with counsel on any

11   other proposal, we are not -- our position is not that they

12   can't have this evidence.  Our position is these depositions

13   should not take place in Somalia at this point for all the

14   reasons in our papers.  We prefer these witnesses to come

15   into court and be on the stand and be cross-examined.  We

16   would like to work with the defense to see if we can get them

17   here.  If the defense wants to get them somewhere else,

18   that's a possibility.  Other than the brief reference in the

19   rely brief, they've never contacted us about it to discuss

20   it.  Our phone's never rung for a conversation about how

21   about Djibouti, what would it take, when could we do it, how

22   do we do it.  It's never rung with respect to hey, do you

23   think that one guy, witness number 7, do you think he could

24   get a visa, could you help us, government.  Those have never

25   happened.  What's happened is only what's in the papers.

1    That's what we responded to.  And for the reasons stated in

2    the papers, we think the motion should be denied.

3              THE COURT:  Okay.  I'm going to take this matter

4    under submission, and regardless, I'll repeat what I asked

5    all counsel to do over three months ago:  See Judge Gallo to

6    discuss what alternatives may be in the cards here.

7              MR. DRATEL:  Your Honor, may I ask just a question

8    about procedure?

9              THE COURT:  Yes, sir.

10             MR. DRATEL:  We'll obviously discuss with the

11   government and we'll discuss it with Magistrate Judge Gallo.

12   If the motion changes character in terms of a place, should

13   we be telling Judge Gallo and he will communicate with you or

14   should we communicate with you directly through papers --

15             THE COURT:  Doesn't that really depend on what

16   happens between the parties and with the assistance of Judge

17   Gallo?  If, for example, you're able to reach a stipulation

18   in this case for depositions to go forward or some other

19   alternative to what we would recognize as traditional

20   depositions, then that might be the end of it right there, a

21   stipulation and an order.  If the parties aren't able to

22   agree and there's a further request, you can certainly file

23   that request on shortened notice, and we can telescope a

24   briefing schedule here and deal with it on that basis.

25   That's all I'm asking at this point.  I'm asking at this

1    point what I was asking back in April of this year.

2              MR. DRATEL:  Thank you, your Honor.

3              THE COURT:  Okay.  Mr. Cole?

4              MR. COLE:  One thing also, that to the extent

5    expediting any evidence that would be taken as well as

6    expediting the trial, one thing that was raised by the

7    parties today is issues with transcripts we provided them.

8    We think it's critical to expedite the trial or any

9    depositions that would take place, that the defense confer

10   with us if they think there are problems with the

11   transcripts.  We'd like to see their transcripts, and we'd

12   like to work out through collaboration if there are problems

13   with the transcript, get an agreed-upon set to the extent

14   possible.  That's really going to speed things up.  So we

15   would request provision of their transcripts to us as we

16   provided ours to them.

17             THE COURT:  Who'd like to speak to that?  Mr.

18   Dratel, I think -- who was discussing that initially?

19             MR. DRATEL:  Ms. Fontier would --

20             THE COURT:  Ms. Fontier was, but I know you're both

21   representing --

22             MR. DRATEL:  We just got the transcript Monday

23   obviously and --

24             THE COURT:  Yes.

25             MR. DRATEL:  -- came out here yesterday.  I don't

1    know if I can speak for everyone about what everyone's

2    position is, but we will obviously at least -- we hear what

3    Mr. Cole says.

4               THE COURT:  Well, I think it's important for you to

5    sit down, and -- another discovery matter has arisen here.  I

6    don't see why you couldn't take this up with Magistrate Judge

7    Gallo if in fact you're having difficulty amongst yourselves

8    sitting down and working out some kind of protocol to check

9    for accuracy on any of these transcripts.

10              Now, I know you have a lot of transcripts; you

11   have, what 1800 intercepts or whatever all together?  And I

12   know that you were receiving either no transcript or a

13   partial transcript with respect to the vast majority of those

14   calls that were provided to you, those intercepts.  But as I

15   recall, there's only about 126 intercepts that were

16   identified by the government as pertinent, and so you're

17   dealing with a finite group of intercepts there and probably

18   a much smaller number of intercepts that form the basis of

19   the charges here, so I would think that that's something that

20   the parties, if they wish to work together to get an

21   agreed-upon transcript, could start working on immediately

22   and with a good likelihood of achieving success.

23              MR. DRATEL:  Thank you, your Honor.

24              THE COURT:  Okay.  So that would be my suggestion

25   at this point.  And obviously it's imperative that an

 1   agreed-upon translation of the core intercepts be achieved

 2   before going to trial.

 3          MR. DRATEL:  I will say part of it is an ongoing

 4   process on our end because we -- in terms of the resources

 5   that we have in terms of translating, we started out with a

 6   certain type of protocol in order to try to identify

 7   discrepancies, and then once we see a material discrepancy,

 8   then we go for a verbatim.  One of these -- some of these

 9   conversations are 45 minutes to an hour long.  It's not --

10   even though it's -- even though it's only 126 calls, it's not

11   hello and goodbye; some of them are rather lengthy.  So it's

12   a -- it's a time-consuming process for the interpreters, and

13   as you know, they're not -- you know, there are so few

14   available.

15          THE COURT:  Right.  And that segues into the next

16   issue I wanted to bring up, just to make sure you're doing

17   okay on translators, but before do I that, you know, these

18   pertinent conversations were -- they were provided some time

19   ago as I recall.  I know they weren't provided all at one

20   time, Mr. Cole, but when was the last of them provided to the

21   defense?

22          MR. COLE:  I think there's been, this year, in

23   2012, a handful of new transcripts, like parts that weren't

24   transcribed before, literally like less than ten, maybe four

25   or five, where we gave a transcript of a call that hadn't

1  been provided before.  My best recollection, your Honor --

2  and counsel, if we go back and look at our discovery logs, I

3  may be wrong, so I'm not trying to assert it with certainty,

4  I don't have the discovery log in front of me -- but I'm

5  thinking that the vast -- just about all of those went over

6  in -- at least in 2011.

7          That said, we are -- to make the review easy, we

8  are preparing to give out to defense counsel a binder with an

9  even further refined reduced number that we really care about

10 for its case-in-chief.  And if they want to give us whatever

11 they have on a rolling basis of questions about the

12 transcripts, we'll be happy to look at it and get back to

13 them and see if we can reach resolution.

14          THE COURT:  Thank you.  Then getting back into the

15 matter of translators, last time we were together, I know we

16 had a relatively brief discussion about that.  There was some

17 concern at the time that you had enough resource there, that

18 you had translators to assist, and I know the -- I think it

19 was the government was going to provide a list of people who

20 might be of assistance to the defense who were not FBI

21 employees or contractors.  Is there still a concern with

22 respect to translators?

23          MS. MORENO:  No, your Honor.  We have one

24 translator --

25          THE COURT:  Okay.

1            MS. MORENO:  -- who is certified in fact and has

2    been working on this case exclusively.  The list that was

3    provided -- I think there were three or four names -- months

4    ago by the government, they were contacted.  None of them --

5    all of them had a conflict.

6            THE COURT:  Okay.

7            MS. MORENO:  So we have located a translator who's

8    exclusively working for us and has no conflict on these

9    calls.  I have a question about the protocol issue because

10   I'm concerned about this.  If there is no agreement about the

11   translation between the parties, is there a certain protocol

12   that the Court is envisioning in terms of how that would play

13   out?

14           THE COURT:  Not at this point.

15           MS. MORENO:  Okay.  But to answer your question, we

16   do have a translator.

17           THE COURT:  Thank you.  Okay.  Any other issues

18   that we need to discuss or consider?

19           MR. DURKIN:  Judge, can I address my motion?

20           THE COURT:  You mean the stay, motion for stay?

21           MR. DURKIN:  Yeah or, in the alternative, to

22   continue.

23           THE COURT:  Well, why don't you -- if you'd like to

24   remain there, that's fine, Mr. Dratel.  As I went through

25   your motion for a stay, I was obviously impressed by how

 1    substantially it was tethered to an anticipated grant of Rule

 2    15 depositions as they're presently being requested.  I think

 3    that was the -- I think that was the real underpinning of

 4    your motion for a stay.  But if there's something else you

 5    wanted to address, you certainly may.  It seemed to me to

 6    make better sense to allow the Court to rule on the present

 7    motion for the Rule 15 depositions and then to see where we

 8    are after that.  But go ahead, sir.

 9           MR. DURKIN:  Here's -- here's what I had in mind

10    and the reason I made it in the alternative, to continue the

11    trial date.  I mentioned on page 3 of my pleading in the

12    footnote about the alternative arrangements that might be

13    made in Djibouti or Kenya.  I think, and particularly now

14    that you've suggested that we can try -- and the government

15    has taken the position that they're not opposing taking the

16    depositions, they're only opposing the taking of them in

17    Somalia -- I'm pretty confident that we should be able to

18    work something out with the magistrate that will be

19    acceptable to you if that's how it works.  I think that's --

20           THE COURT:  Well, no, no, not really.  That's not

21    how it works.  Actually if it's acceptable to the parties, if

22    the parties are able to reach agreement and that agreement

23    envisions the deposition going forward, then, you know, as I

24    indicated, put it in a stipulation, I'll be happy to sign off

25    on an order adopting the stipulation as an order of the

1   Court.  So I'm assuming that the issues that the government

2   has raised will somehow be addressed by any arrangements that

3   seem acceptable to both sides or rendered moot.  So that's --

4           MR. DURKIN:  What I was referencing is that in

5   light of how critical this is and in light of the fact that I

6   had requested it before, I would like to move then to

7   continue -- and that's why I made the motion in the

8   alternative -- to continue this trial date because I don't

9   see how it's possible to try the case in October under either

10  scenario because right now my entire theory of the defense is

11  linked to those depositions or at least in significant part,

12  and I think I can speak for everyone else on that one.  But I

13  don't see how -- I think it's simply a matter of fundamental

14  fairness we at least be given the opportunity to explore the

15  other alternatives or try to work this out.  I think it's

16  important enough.  And that's why I'd like -- I'd like to get

17  a continuance today because I don't know how I can try the

18  case in October.  I don't know when you anticipated ruling,

19  but --

20          THE COURT:  I'm going to rule very quickly on this,

21  so I would -- if I were counsel here, I would anticipate a

22  ruling within a week --

23          MR. DURKIN:  Okay.  But --

24          THE COURT:  -- but that should not deter counsel

25  from seeing Judge Gallo at this point and working on

1    alternatives.  I think you should -- I think you should work

2    on alternatives.  The ruling is going to be forthcoming.  I

3    have grave concerns, security concerns, which in my view are

4    of the utmost importance.  I know that counsel have just

5    assumed that it's okay to have government personnel traveling

6    to Somalia to have these depositions taken at a location

7    adjacent to the airport, the S.K.A. site, and it's -- it's

8    extremely dangerous there.  You know, you have -- you have a

9    war-torn, civil-war-torn, ravaged country without any

10   functioning government, without any functioning judicial

11   system where terrorist activity is taking place and where the

12   United States government has absolutely no presence.  And

13   it's asking an awful lot to have this Court send into the

14   teeth of that kind of a circumstance --

15              MR. DURKIN:  You and I see eye to eye --

16              THE COURT:  -- prosecutors who will be largely

17   known at the time of their arrival in this location as people

18   who are prosecuting members who are allegedly supporting

19   al-Shabaab.  So that's an awful lot to ask of the Court, an

20   awful lot to ask of the government, and, frankly, an awful

21   lot to ask of yourselves, to go back into that kind of a

22   circumstance.  You've been fortunate in your earlier

23   concerns, so -- or your earlier visit, but I still have my

24   concern, and I want you to know that.  And that's a big part

25   of why I'm asking everyone to do what I suggested months ago,

1  to sit down with Judge Gallo and allow him to manage

2  discovery issues.  I mean what a shock, what a revelation

3  that Mr. Cole is saying we're willing to sit down and discuss

4  these things and we can see the possibility of working out

5  some alternative that is acceptable to everyone.  I'm sure

6  Mr. Cole would have taken that position -- I shouldn't limit

7  this to Mr. Cole; we have Ms. Han here -- but the government

8  would have taken that position months ago.  And

9  unfortunately, we are where we are at this particular point

10 in time, so let's not --

11            MR. DURKIN:  No, I understand, but --

12            THE COURT:  Go ahead.

13            MR. DURKIN:  That's -- you and I don't see

14 necessarily -- I don't thing we're at opposites and that in

15 fact we see eye to eye.  But my whole -- the whole point of

16 my motion in December was that I wasn't sure we could even go

17 there to investigate, but I did say in the pleadings that I

18 thought there was evidence that we needed to obtain there.  I

19 turned out to be right, and -- but I was wrong on whether we

20 could go there together.

21            I think realistically the alternative -- I mean one

22 of the problems I have is -- and I don't mean this as

23 criticism of Mr. Cole; he and I have gotten along fine -- but

24 whenever we -- we were never told -- whenever we mentioned

25 going to Somalia, the government never told us to forget

1   about it, nobody can do that.  And I -- you know, had we

2   known that up front, I think we would have probably just

3   proposed the alternatives right away.  What I'm saying is I

4   think it's very realistic that we can have the alternatives,

5   but I don't think we can do all that and -- because I

6   certainly can't do all that and be ready to try this case in

7   October.

8            THE COURT:  You may well be right, Mr. Durkin.  I'm

9   not going to arbitrarily deny motions for continuance even

10  though the matter has already been continued once, and even

11  though I'm very concerned about the length of time these

12  gentlemen have been in custody.  I know you are as well, all

13  of you are, we all are.  We all went to get this case to

14  trial just as soon as practicable and respecting the due

15  process rights of the parties and ensuring both sides have a

16  fair trial.  I think we're all after that basic goal.  Mr.

17  Cole?

18           MR. DURKIN:  So that -- just so I'm clear --

19           THE COURT:  I'm not responding, I'm not --

20           MR. DURKIN:  -- are you going to rule?

21           THE COURT:  I'm not going to rule on a motion to

22  continue or a motion to stay the action at this point.

23  You've -- the government hasn't even been given an

24  opportunity -- you may see that as form or substance; I see

25  it as basic fairness -- the government has not been given an

 1   opportunity to even address the stay issue.  If -- and this

 2   is just one conceivable scenario that could play out -- if,

 3   for example, the parties can reach an agreement on

 4   alternatives to Rule 15 depositions going forward in Somalia

 5   but that it's going to take time to arrange and to complete

 6   and to digest all of that, and there's a corresponding

 7   request to continue the trial either agreed to by the

 8   government or opposed, then I'll deal with that at the

 9   appropriate point in time.  It's also conceivable that

10   everybody could be ready if some alternative is agreed upon

11   quickly and can proceed efficiently.  I just don't want to

12   prejudge that situation now, but I don't think you need to be

13   concerned about the Court arbitrarily denying a motion to

14   continue.  Actually, the motion to stay the action I think

15   would -- I think a better way -- to simply stay the action

16   and have nothing happening in the case is -- should give way

17   to keeping the case active and then continuing dates as

18   necessary.

19            MR. DURKIN:  So you just enter and continue this

20   motion?  Do you want to set a time for the government to

21   respond to it or should we -- how should we handle that?

22            THE COURT:  Well, I can certainly do that.

23            MR. DURKIN:  I'd like that.

24            THE COURT:  You're talking about your motion to

25   stay at this point?

 1            MR. DURKIN:  Yes.  Stay or, in the alternative, to
 2    continue.
 3            THE COURT:  Okay.  But I'm trying -- what I'll
 4    probably end up doing, I'll give the government an
 5    opportunity to respond, but what my inclination at this point
 6    would be to deny an outright motion to stay and to rule upon
 7    a motion to continue the trial date until after the parties
 8    have an opportunity to sit down with Judge Gallo and at least
 9    confer amongst themselves and see what's going on with the
10    management of this whole issue.
11            MR. DURKIN:  Then I'd request you simply enter a
12    continuance then rather than have to brief it now.
13            THE COURT:  All right.  I'll -- what I'll do is,
14    Mr. Durkin, I'll just deal -- I'll address that in the order
15    addressing the Rule 15 depositions.
16            MR. DURKIN:  That's fine.
17            THE COURT:  So at least you'll have something of
18    record.  And I appreciate your desire for form and having
19    this Court rule on the record.  After all, we are a court of
20    record.  Thank you.  Mr. Cole?
21            MR. DURKIN:  Sometimes my Irishness gets me --
22            THE COURT:  Understood.
23            MR. DURKIN:  It's not on purpose.
24            MR. COLE:  And just for the record, we -- unless
25    the Court desires it, we are -- we have no intention of

1  responding further to the motion to stay.  That was

2  essentially a refiling of the motion already before the Court

3  that we did respond to.  And so we can brief that further,

4  but we think that's been briefed, and -- we have nothing to

5  add I guess, your Honor, on the stay.

6          THE COURT:  Okay.

7          MR. COLE:  As for the motion to continue, we're

8  very desirous to see the case go forward in October.  We do

9  acknowledge that any alternative we work out with Judge Gallo

10 that does result in a deposition somewhere else -- or even

11 results in a witness showing up here at trial, any of those

12 alternatives may make an --

13         THE COURT:  After all, only 66.8 percent -- if I

14 accept these statistics submitted by the defense, only

15 66.8 percent of Somalis who have requested a visa for travel

16 to the United States have been refused, so that leaves

17 one-third, right --

18         MR. COLE:  Right, and we can --

19         THE COURT:  -- and we --

20         MR. COLE:  -- probably facilitate -- we can

21 probably do facilitation to try and maybe increase that

22 percentage.  That said, I will grant and agree with the

23 defense that those are timely processes, and to be in the

24 position of negotiating in good faith to either take the

25 depositions somewhere else or to try to get someone into the

 1   country, either one of those things is a huge distraction

 2   from the last six weeks before trial here.  And so I guess --

 3   I guess that's a long way of saying that we don't want a

 4   continuance, but we also don't want to spend our last six

 5   weeks before trial engaged entirely on a matter that is going

 6   to distract us completely from trial prep.

 7              And so with that said, what we'll do is we will

 8   meet with counsel as soon as we can, see Judge Gallo as soon

 9   as we can, and then get back to your Honor with proposals.

10   And if that proposal involves a continuance that we don't

11   want but that is necessary, that will come to your Honor.

12   The only concern I have about that is counsel are all across

13   the country, and if there is going to be a continuance, is

14   that something that could be done without appearances again,

15   or are we going to need to reconvene and have that be

16   proceeding with all present?

17              THE COURT:  Well --

18              MR. COLE:  Maybe I'm asking questions that don't

19   need to be asked right now, your Honor, but I just -- I do

20   have a concern that, you know, we are -- we are pushing to

21   have this motion denied because we think it should be denied,

22   we're seeing there may be alternatives, and yet we're in a

23   box now on the time, the very short period of time now to

24   prepare for trial.

25              THE COURT:  There's pending before the Court a

1    motion to stay, Mr. Durkin's motion to stay, and indications

2    from all sides that perhaps a continuance of the trial date

3    would be appropriate under any and all circumstances as I'm

4    reading the arguments of counsel.

5            If anyone is in disagreement with that rough

6    assessment of where we are right now, please state that you

7    are not in agreement with that summary.  I don't see any

8    responses.  So I'm assuming that everyone is basically

9    requesting, at the very least, some reasonable continuance

10   to, first of all, deal with the ruling that will come out

11   with respect to the pending Rule 15 motion, to engage in

12   further discussions and arrangements between yourselves and

13   with Judge Gallo for management of some -- any outstanding

14   discovery, including the Rule 15 request, and to thereafter

15   prepare for a viable trial date.  Are you all in agreement

16   with that?  Is that what --

17           MS. MORENO:  Yes, your Honor.  And if I may speak

18   for I believe the entire defense team here, that it is our

19   intention to approach the government today, meet with them

20   today with respect to a viable discussion on alternatives,

21   addressing specifically security issues that touch upon the

22   alternatives that were mentioned before your Honor.  I would

23   point out we have scheduled a September 14 trial readiness

24   date already with the Court; is that --

25           THE COURT:  And you have your motions in limine

1   briefing schedule set as well obviously with motions in

2   limine to be heard about ten days before your trial date.  So

3   that's a very good point you raise.  I mean you'd have to

4   standard scrambling on a few other fronts in order to comply

5   with the present schedule.

6           MS. MORENO:  And if there is some fruitful

7   production out of the discussions with the government with

8   respect to alternatives, viable alternatives, that move the

9   Rule 15s forward, would that be something that the Court

10  would consider with respect to this September 14 trial

11  readiness date?  Perhaps we could come back before the Court

12  then.  I'm trying to take the temperature of the Court's

13  thinking in all these alternatives because we're going to all

14  leave here in a day and scatter.

15          THE COURT:  Well, okay.  You really need to work

16  diligently amongst yourselves, both sides, and you're working

17  on a couple of different fronts as I see it, and I won't

18  repeat what's already been said.  You know where the rubber

19  needs to meet the road here.

20          With respect to the trial date and your other

21  pending dates, discuss that issue separately.  And what you

22  might do is come up with a new schedule of dates that you

23  feel would work for you, assuming that you're going to be

24  involved with your discussions here for some period of time,

25  and if arrangements can go forward for some form of Rule 15

1   depositions somewhere, that will necessitate time as well.

2   So build all of that in.  If you need to come back with a

3   proposed new schedule of dates, then I would suggest that Mr.

4   Cole and/or Ms. Han and perhaps one individual representing

5   all of the entire defense community here meet with me here in

6   chambers, and we can work that out.  I don't need to see

7   counsel coming from all over the country.  Obviously it would

8   only be a scheduling matter, so these gentlemen would not

9   need to be present.  And you could arrange that at any time;

10  you can call chambers, and we would try to arrange something

11  for you.  So that's more or less where things are right now.

12          MS. FONTIER:  Thank you very much, your Honor.

13          THE COURT:  I think the parties still want and need

14  a ruling on the pending Rule 15 motion; that's not being

15  withdrawn as I understand it, so I will go ahead and get that

16  order out.  It will obviously express some concerns I have,

17  many of which have been mentioned today.  But don't let that

18  chill your efforts to immediately get cracking on this and

19  working on alternatives, all right?

20          Anything else with respect to discovery?  Let's

21  assume that we weren't even dealing with a Rule 15, there

22  were no Rule 15 prospective deponents; let's assume that

23  otherwise the case is where it is right now.  I assume the

24  parties would be ready to proceed to trial, that there are no

25  other discovery issues or other impediments to the case going

1  forward as presently set.

2          MR. GHAPPOUR:  Your Honor, I just wanted to notice

3  the Court that we'll probably be supplementing our bill of

4  particulars on the basis of this new --

5          THE COURT:  I'm sorry.  You'll be supplementing --

6          MR. GHAPPOUR:  -- the bill of particulars that was

7  filed back in February or December on the basis of the new

8  indictment.

9          THE COURT:  Okay.

10          MS. MORENO:  And also, your Honor, we just received

11  in the last few days more discovery from the government, some

12  of which is redacted.  I spoke to Mr. Cole this morning in an

13  effort to try to understand what that -- the substance of the

14  redactions, the grounds for it, et cetera.  We're going to

15  discuss that further, but that might be something that we may

16  have to bring before the Court with respect to discovery.

17  And it's -- as I said, the production was, I don't know,

18  maybe three, four days ago, on this new redacted material.

19          THE COURT:  Okay.  I assume all defense counsel

20  have conferred with their clients on the matter of the trial

21  being continued if in fact it is necessary to continue the

22  trial, and everyone is in agreement, the individual

23  defendants are in agreement; is that correct?

24      (Affirmative voices.)

25          THE COURT:  All right.  And all trial counsel have

1   indicated their affirmative responses to that.  Anything else

2   before we break?  All right.  Listen, get together and get an

3   alternative schedule, you know, in the works if in fact

4   everyone seems to be on board with the necessity for moving

5   some dates, and then let's get that schedule set just as soon

6   as possible.

7           MR. DURKIN:  Could I just have one minute to speak

8   to my client?

9           THE COURT:  Certainly.  Gentlemen, I assume it's

10  okay counsel have a moment with their clients?

11      (The proceedings were concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>Certificate of Reporter</u>

I hereby certify that I am a duly appointed, qualified, and
acting Official Court Reporter for the United States District
Court; that the foregoing is a true and correct transcript of
the proceedings had in the mentioned cause on the date or
dates listed on the title page of the transcript; and that
the format used herein complies with the rules and
requirements of the United States Judicial Conference.


Dated September 10, 2012 at San Diego, California.

*Debra M. Henson*
                         /s/ Debra M. Henson  (electronic)
                         Debra M. Henson
                         Official Court Reporter